896 A.2d 354

**Alan Bruce CHMURNY**

v.

**STATE of Maryland.**

**No. 77, Sept. Term, 2005.**

Court of Appeals of Maryland.

April 13, 2006.

Steven D. Kupferberg, Rockville, for appellant.

Sarah Page Pritzlaff, Asst. Atty. Gen. (J. Joseph Curran, Jr., on brief), for appellee.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

WILNER, J.

In a consolidated Opinion in *Surland v. State*, 392 Md. 17, 895 A.2d 1034 (2006) and *Bell v. State*, 392 Md. 17, 895 A.2d 1034 (2006), we held that, when a defendant in a criminal case dies after being convicted in Circuit Court and while a properly filed appeal of right is pending in the Court of Special Appeals or this Court, (1) the appeal may proceed if a substituted party, appointed in conformance with Maryland Rules 1–203(d), 2–241, and 8–401, elects to have it proceed, (2) if the appeal proceeds, the fate of the judgment will depend on the result of the appeal, but (3) if, within the time allotted, no substituted party elects to have the appeal proceed, it will be dismissed and the judgment will remain intact, as with any other dismissed appeal.

In this case, the question is what happens when the defendant dies after a verdict of guilty is rendered but before sentence is imposed and any appeal can properly be taken. Unfortunately, the question is presented in an untimely and unauthorized appeal which, consequently, must be dismissed.

## BACKGROUND

In an eight-count indictment, Alan Chmurny, was charged in the Circuit Court for Howard County with first and second degree assault (Counts 1 and 2), three counts of reckless endangerment (Counts 3, 4, and 5), stalking (Count 6), malicious destruction of property (Count 7), and harassment (Count 8). Prior to trial, Counts 6 and 8 were severed. On September 12, 2001, after a five day trial, a jury found Chmurny guilty on Counts 1 through 5 and not guilty on Count 7. Sentencing was scheduled for November 15, 2001. We are informed that, contemporaneously with the return of the verdicts and the scheduling of sentencing, Chmurny, while still in the courtroom, ingested cyanide poison, from which he died the next day.[1] Six days later, the State filed a "Line" requesting that the untried Counts 6 and 8 be scheduled "for an abatement by death." On September 24, 2001, defense counsel moved "that this matter be dismissed by suggestion of death." That was supplemented by a second, more specific motion filed October 12, 2001, to dismiss Counts 1 through 5 and 7. Citing *Jones v. State*, 302 Md. 153, 486 A.2d 184 (1985) and *Russell v. State*, 310 Md. 96, 527 A.2d 34 (1987), counsel contended that, when a defendant dies prior to sentencing, the case must be dismissed.

On October 12, 2001, the court held a hearing on the motions, although the proceeding, presumably limited to argument of counsel, was not transcribed. The court abated

---

1. No transcript was ever prepared of what occurred in the courtroom, although such a transcript may have provided some helpful information. It is only from an undisputed statement in the State's brief, referencing two articles in the Washington *Post*, that we learn of the immediate, dramatic, and ultimately successful, suicide attempt.

Counts 6 and 8, as requested by the State, but declined to dismiss the verdicts on the remaining counts, as urged by defense counsel. Those rulings were contemporaneously recorded on a Criminal Hearing Sheet that was placed in the record and in docket entries made by the clerk. On November 8, 2001, counsel moved for reconsideration of the denial of his motion to dismiss the counts on which verdicts had been rendered. Although, with the lack of a transcript and the omission of any explanation noted either on the Criminal Hearing Sheet or in the docket entries, there is no indication of why the court ruled as it did, counsel asserted in his motion to reconsider—and the State has never denied the assertion— that the court had based its decision on the premise that there was "no mechanism or procedure for the dismissal of the Counts which resulted in a jury verdict, but did not proceed to sentencing." In response, counsel argued that, because Chmurny's death precluded him from exercising his appellate rights, *Jones* and *Russell* did, indeed, mandate that the entire criminal proceeding be abated. The court denied the motion the next day, without a hearing.

No appeal was taken from the court's ruling. Indeed, nothing more was done for nearly four years. The case remained officially open, with guilty verdicts recorded on five counts, a not guilty verdict on one count, no disposition on the guilty verdicts and no disposition possible on those verdicts, and thus no judgment entered on any of the six counts on which verdicts had been rendered. On June 24, 2005, defense counsel in the case filed a new motion, nearly identical to the motion filed in October, 2001, to dismiss Counts 1 through 5 and 7. The motion is stated to be that of "the Defendant, ALAN BRUCE CHMURNY, by and through his attorney."

The State opposed the motion, stressing the point apparently of concern to the court earlier, that there was no mechanism for dismissing or abating verdicts returned by a jury. Neither *Jones* nor *Russell*, the prosecutor claimed, was on point; *Jones* dealt with the defendant's death while the case was pending on *certiorari* review in the Court of Appeals, and *Russell* dealt with a defendant who died while pending trial.

No case, he claimed, and no Rule or statute provided for the abatement of guilty verdicts that had not ripened into judgments. Once again, without any recorded explanation, the court, on July 1, 2005, denied the motion, whereupon, on July 11, 2005, "the defendant, Alan Bruce Chmurny, by and through his attorneys," filed an appeal from the July 1, 2005 denial of the motion to dismiss. We granted *certiorari* prior to any disposition by the Court of Special Appeals to consider the issue in conjunction with *Surland* and *Bell.*

## DISCUSSION

There are two equally dispositive defects with respect to this appeal. First, counsel had no authority to file it, and second, it was untimely.

As far back as 1830, this Court declared that an appeal filed by an attorney for a party who had died prior to the filing of an appeal was "not a mere irregularity, but a complete and radical defect," requiring dismissal of the appeal. *Owings v. Owings,* 3 Gill & J. 1, 2, 4 (1830). The Court has confirmed that holding on a number of occasions. In *Switkes v. John McShain,* 202 Md. 340, 348, 96 A.2d 617, 621 (1953), our predecessors made clear, as a matter of basic agency law, that "ordinarily the death of the principal revokes an agency and terminates the power of the agent to act" and that "[t]his rule includes the agency embodied in the relationship of client and attorney." In that case, we held that, where a claimant died after the Workers' Compensation Commission denied his claim for benefits, the claimant's attorney had no authority to seek judicial review, even though the attorney claimed an interest in a potential attorney's fee if the judicial action was successful. The judgment of the Circuit Court dismissing the action—in those days denoted as an "appeal" from the Commission—was affirmed.

More recently, in *Brantley v. Fallston General Hospital, Inc.,* 333 Md. 507, 511, 636 A.2d 444, 446 (1994), we expressly reaffirmed *Switkes,* holding that (1) "[o]rdinarily, under well-established principles of agency law, an agent's authority

terminates upon the death of the principal," (2) "[t]he lawyer-client relationship is not excepted from this rule," and (3) "an attorney has no authority to note an appeal on behalf of a client who has died." The appeal in *Brantley,* filed long after the client had died, was ordered dismissed.

■  As a purely housekeeping measure and more as an officer of the court, counsel would be authorized to bring to the court's attention that the defendant has died, offer evidence of that fact, and move, as trial counsel did here, to dismiss the counts that proceeded to verdict. No financial or other detriment can accrue to the defendant's estate or lingering reputation from such a motion, whether granted or denied, and, as we shall point out later, dismissal of those counts is appropriate as a matter of proper judicial administration. Filing an appeal is another matter; that is not a housekeeping measure. At the very least, court costs, printing costs incurred in preparing a transcript, brief, and record extract, and attorneys' fees may be assessed against the defendant's estate. Apart from the possible financial burden, it would be impossible to know whether the defendant would have wanted to risk a wider disclosure of his or her convictions that an appeal might entail. It is impermissible for an attorney who no longer has a client, or any authority to act for an erstwhile client, to step into the shoes of the former client and take and pursue an appeal. When the attorney does that, the attorney in effect becomes the appellant, for there is no other principal in the matter, but the attorney has no legal standing to assume that status. On this basis, the appeal must be dismissed pursuant to Maryland Rule 8–602(a)(1) (appeal not allowed by law).

■  Apart from counsel's lack of substantive authority or standing to file this appeal, the appeal must be dismissed as well because it is untimely (Md. Rule 8–602(a)(2) and (3)). The dispositive motions, with respect to the issue sought to be raised, were those filed by counsel on September 24 and October 12, 2001, which were denied October 12, 2001. Assuming, as appears to be the case (and is not disputed), that

the court denied the motion on the ground that it had no authority to grant it, that denial was a final disposition of the matter. The case, insofar as the court was concerned, was over; no further relief, in its view, was possible and none would ever be granted. That certainly was the situation when the motion for reconsideration was denied on November 9, 2001. At that point, whether the court was right or wrong in its decision to leave the verdicts as they were, the ruling was appealable. No further proceedings in or rulings by the court, on that or any other issue, were anticipated or regarded as necessary.

With exceptions that are of no assistance to counsel/appellant, Maryland Rule 8–202(a) requires that an appeal be noted within 30 days after the entry of the judgment or order from which the appeal is taken. In *Houghton v. County Comm'rs of Kent Co.*, 305 Md. 407, 413, 504 A.2d 1145, 1148 (1986), we confirmed the view expressed in several earlier cases that the 30–day requirement "is jurisdictional; if the requirement is not met, the appellate court acquires no jurisdiction and the appeal must be dismissed." We iterated that view even more recently in *Ruby v. State*, 353 Md. 100, 113, 724 A.2d 673, 679 (1999).

The issue sought to be raised in this appeal is precisely the same as that raised in the October, 2001 motion, and on the very same record. No new relevant factual or legal event has occurred between the denial of the 2001 motion and the denial of the 2005 motion that would make this appeal any different than an appeal that could have been taken in 2001; the issue is the same and the factual and legal basis for the appeal is the same. When the denial of a motion constitutes a final, appealable judgment, one cannot allow the time for noting an appeal from that judgment to lapse and escape the jurisdictional bar by filing another, identical motion or a motion to reconsider the earlier ruling months or years later and then appealing the denial of that second motion.

Rarely, but occasionally, this Court will address an issue in a case that is legally moot "where the urgency of

establishing a rule of future conduct in matters of important public concern is both imperative and manifest." *State v. Ficker,* 266 Md. 500, 507, 295 A.2d 231, 235 (1972); *Attorney Gen. v. Anne Arundel County School Bus Contractors Assn., Inc.,* 286 Md. 324, 327, 407 A.2d 749, 752 (1979); *Hammen v. Baltimore County Police Dept.,* 373 Md. 440, 450, 818 A.2d 1125, 1131 (2003); *J.L. Matthews, Inc. v. Maryland–National Capital Park & Planning Commission,* 368 Md. 71, 96–97, 792 A.2d 288, 303 (2002). This appeal is not moot; it is barred for other reasons. Nonetheless, it raises an issue that transcends any interest of Mr. Chmurny, that is of significant importance to the public generally and to the Judiciary in particular, and that creates the urgency for a rule of future conduct by the courts that "is both imperative and manifest." The same imperative that allows the Court to address an issue in a case that is moot necessarily must permit the Court, in the equally rare case, to address an issue in an appeal that must be dismissed for other reasons.

■ Cases—particularly criminal cases—have a beginning and they must, at some point, have an end. *Cf. Frase v. Barnhart,* 379 Md. 100, 126, 840 A.2d 114, 121 (2003). It is not in the public interest and it is not proper judicial administration or procedure to have criminal cases permanently in limbo, without even the prospect of a judgment ever being entered. Chmurny was found guilty on five counts, but, because he is dead, he cannot be sentenced. He cannot allocute or even be present, which, absent a waiver that cannot be given, are legal prerequisites to imposition of sentence. *See* Maryland Rule 4–342(f); *Harris v. State,* 306 Md. 344, 509 A.2d 120 (1986); *Tweedy v. State,* 380 Md. 475, 492, 845 A.2d 1215, 1225 (2004).

■■ A conviction does not occur in a criminal case until sentence is imposed on a verdict of guilty. That is when judgment is entered. *See Tweedy v. State, supra,* 380 Md. at 496, 845 A.2d at 1227; *Greco v. State,* 347 Md. 423, 433, 701 A.2d 419, 423 (1997); *Whack v. State,* 338 Md. 665, 659 A.2d 1347 (1995); *Myers v. State,* 303 Md. 639, 645, 496 A.2d 312,

315 (1985). A verdict of guilty alone constitutes neither a conviction nor a sentence and "do[es] not constitute a source of relevant legal authority." *Goldsborough v. State*, 12 Md. App. 346, 358, 278 A.2d 623, 630 (1971). No appeal lies from a verdict. *Jones v. State*, 298 Md. 634, 637, 471 A.2d 1055, 1057 (1984). Until sentence, and with it a judgment, is entered, the presumption of innocence continues to exist; it is the judgment that rebuts and erases that presumption. *See McCoy v. Court of Appeals of Wisconsin Dist. 1*, 486 U.S. 429, 436, 108 S.Ct. 1895, 1900, 100 L.Ed.2d 440, 451 (1988) ("After a judgment of conviction has been entered, however, the defendant is no longer protected by the presumption of innocence").

Thus, as the case now stands, there is no conviction and no judgment, and, under the court's ruling, there never will be a conviction or judgment; the case will remain permanently open and incomplete on the docket. *See Jones v. State, supra,* 298 Md. at 637, 471 A.2d at 1057 ("[O]rdinarily a criminal case is not complete and the case is not disposed of until sentence has been pronounced"); *Langworthy v. State*, 284 Md. 588, 596, 399 A.2d 578, 583 (1979), *cert. denied,* 450 U.S. 960, 101 S.Ct. 1419, 67 L.Ed.2d 384 (1981). Maryland Rule 4–331(b) permits a circuit court, on a motion filed within 90 days after imposition of sentence, to set aside an unjust or improper verdict. Because sentence can never be imposed, the 90–day period would never start to run, and the court, theoretically, would have revisory power to set aside the verdict forever.

Because the case can never move forward to judgment, the only way to bring closure to the case is to abate the proceeding *ab initio*—to vacate the verdicts and the indictment. That is what must be done in these rare cases, and that is what should be done, as a matter of course, when, upon dismissal of this appeal, the case returns to the Circuit Court.

**APPEAL DISMISSED; COSTS TO BE PAID BY HOWARD COUNTY.**

Chief Judge BELL joins in the judgment only.