*State of Maryland v. Leonard Lee Simms*, No. 19, September Term, 2017. Opinion by Greene, J.

**CRIMINAL PROCEDURE — PRETRIAL PROCEDURES — NOLLE PROSEQUI — LIMITATIONS ON USE**

Mr. Simms was convicted and sentenced for conspiracy to distribute methlenedioxymethamphetamine, a Schedule I Controlled Dangerous Substance, and he appealed his conviction and sentence to the Court of Special Appeals. While his appeal was pending, the State entered a nolle prosequi in the trial court, and the trial judge agreed to the entry of a nol pros of the charge underlying the conviction and sentence. In the Court of Special Appeals, the State then moved to dismiss the appeal as moot. The Court of Appeals held that, although the State has wide discretion to nol pros charges, the State has no authority to nol pros a final judgment. The defendant has a statutory right to appeal, and as we held in *Friend v. State*, 175 Md. 352, 2 A.2d 430 (1938), the State does not have the authority to undermine that right by attempting to expand its nol pros authority to abandon the prosecution of the underlying charge(s) that lead to the conviction and sentence.

IN THE COURT OF APPEALS

OF MARYLAND

No. 19

September Term, 2017

_____

STATE OF MARLAND

v.

LEONARD LEE SIMMS

_____

Barbera, C.J.
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,


JJ.

_____

Opinion by Greene, J.

_____

Filed: December 18, 2017

This case confronts the question of when the State may exercise its discretion to enter a nolle prosequi[1] to a charge(s) against a criminal defendant. After conviction and sentencing in the Circuit Court for Anne Arundel County for conspiracy to violate the Controlled Dangerous Substance laws, Leonard Simms ("Mr. Simms") appealed to the Court of Special Appeals. Before the Court of Special Appeals heard oral arguments, the State, in the trial court, nol prossed the charge underlying Mr. Simms' conviction and sentence. Subsequently, the State moved to dismiss the case pending before the Court of Special Appeals as moot. The Court of Special Appeals determined that the case was not moot and held that the State lacked the authority to nol pros a charge underlying a conviction and sentence. Ultimately, the Court of Special Appeals reversed the judgment of the Circuit Court based on insufficient evidence. We review the issue of whether the State had the authority to enter a nol pros of a charge that resulted in a conviction and sentence. We affirm the Court of Special Appeals, holding that because the State's authority to nol pros applies only to charges, the State may not use its nol pros authority to alter a final judgment, i.e. conviction and sentence.

## I.

The facts, taken from the parties' agreed-upon statement of fact, have no bearing on the procedural posture of this case and are included only for context. On February 9, 2015,

---

[1] This opinion will use the terms nolle prosequi and nol pros interchangeably, but the term nolle prosequi has also been referred to over time in our jurisprudence as a nolle as well as a nolle pros and a nolle prose. *See Gilmer v. State*, 389 Md. 656, 659, 887 A.2d 549, 550 n.2 (2005) ("A nolle prosequi is often shortened and referred to as a nolle prose or nol pros.") (internal citations omitted).

Officer Rajcsok investigated a report of individuals who had not paid for hotel services after ejectment from the property. The officer found Mr. Simms, along with another suspect, in the vicinity of the hotel. The officer positively identified Mr. Simms and discovered what he believed to be heroin and cocaine among the items in close proximity to where Mr. Simms was found. Mr. Simms was arrested, and it was later discovered that Mr. Simms had ethylone, a Schedule I Controlled Dangerous Substance, on his person.

The State charged Mr. Simms on February 10, 2015, and a grand jury returned a seven-count indictment on March 13, 2015.[2] Mr. Simms filed a Motion to Suppress drugs, which the Circuit Court denied on May 27, 2015. Thereafter, Mr. Simms pled not guilty on November 5, 2015 in the Circuit Court for Anne Arundel County, waived his right to a trial, and proceeded on a previously agreed-upon statement of facts. Before reading the statement of facts into the record, the State orally amended the seventh count of the indictment to possession with intent to distribute methylenedioxymethamphetamine ("MDMA"). At the conclusion of the proceeding, the trial judge found Mr. Simms guilty of the amended count seven on the basis that Mr. Simms had ethylone on his person at the time of arrest. At sentencing, the State nol prossed the remaining six charges. Subsequently, Mr. Simms noted a timely appeal.

---

[2] The original seven charges are as follows — count one: possession with intent to distribute a controlled dangerous substance; count two: possession of a controlled dangerous substance; count three: possession with intent to distribute a controlled dangerous substance; count four: possession of a controlled dangerous substance; count five: possession of a controlled dangerous substance; count six: theft less than $1,000; and count seven: conspiracy to violate controlled dangerous substance laws.

While the conviction and sentence of Mr. Simms was pending on appeal, but before the deadline for briefing by the State in the Court of Special Appeals, the State entered a nol pros in the Circuit Court of count seven, the charge on which Mr. Simms was convicted. Subsequently, the State moved to dismiss the case pending in the Court of Special Appeals on the basis that the case was moot due to its abandonment of count seven. In a reported opinion, the Court of Special Appeals reversed the judgment of the trial court. *Simms v. State*, 232 Md. App. 62, 71, 155 A.3d 937, 942–43 (2017). First, the Court of Special Appeals determined that the case was not moot because the State lacked authority to enter a nol pros of a charge after the defendant had been convicted of and sentenced for that offense. *Id.* at 71, 155 A.3d at 942. Then, the Court of Special Appeals reversed the trial court, holding that evidence of ethylone was insufficient to support a conviction and sentence for conspiracy to distribute MDMA. *Id.* at 71, 155 A.3d at 943.

The State petitioned this Court for certiorari, which we granted to answer the following questions:

1. As a matter of first impression, does the State have the authority to enter a nolle prosequi on a charge after a conviction?

2. If the State does have the authority to do so, was Simms'[] appeal moot because the State entered a nolle prosequi in the circuit court as to the entire case, without objection?

*State v. Simms*, 453 Md. 357, 162 A.3d 838 (2017). Because we hold that the State does not have authority to nol pros charges after the trial court has entered a final judgment, we need not and do not reach the second question.

3

## II.

This Court has never addressed directly the issue presented to us in this case. The State urges this Court to conclude that the State's Attorney has the authority to enter a nol pros, even after a final judgment based on its wide discretion to enter a nol pros. The State contends that this broad authority is derived from the Maryland Declaration of Rights. *See* Maryland Declaration of Rights, Article V, § 3. The State also directs us to the absence of any limitation on the powers of the State to enter a nol pros on appeal in the language of Maryland Rule 4-247. The State maintains, therefore, that the Court of Special Appeals erred in holding that the State could not enter a nol pros in this case.

The legislature and the judiciary have both regarded the act of entering a nolle prosequi as an act inherently tied to charges against a criminal defendant. *See* Maryland Code, Criminal Procedure § 1-101(k) (2001, 2008 Repl. Vol., 2017 Supp.) (defining "nolle prosequi" as "a formal entry on the record by the State that declares the State's intention not to prosecute a charge"). We have defined entering a nolle prosequi "as an official declaration by the State, announcing that it will not pursue the charges in a particular charging document." *Gilmer v. State*, 389 Md. 656, 659, 887 A.2d 549, 550 n.2 (2005) (internal quotations omitted). We have previously described it as "[t]he abandonment of the prosecution." *Barrett v. State*, 155 Md. 636, 638, 142 A. 96, 97 (1928). Md. Rule 4-247 provides the parameters for the State's authority to enter a nol pros:

> (a) Disposition by nolle prosequi. The State's Attorney may terminate a prosecution on a charge and dismiss the charge by entering a nolle prosequi on the record in open court. The defendant need not be present in court when the nolle prosequi is entered, but if neither the defendant nor the defendant's attorney is present, the clerk shall send notice to the defendant, if the

4

defendant's whereabouts are known, and to the defendant's attorney of record. Notice shall not be sent if either the defendant or the defendant's attorney was present in court when the nolle prosequi was entered. If notice is required, the clerk may send one notice that lists all of the charges that were dismissed.

(b) Effect of nolle prosequi. When a nolle prosequi has been entered on a charge, any conditions of pretrial release on that charge are terminated, and any bail bond posted for the defendant on that charge shall be released. The clerk shall take the action necessary to recall or revoke any outstanding warrant or detainer that could lead to the arrest or detention of the defendant because of that charge.

We recognize that the language of Rule 4-247 does not explicitly preclude the State from entering a nol pros on charges at the appellate stage or after final judgment has been reached. Indeed, the Rule is silent on when a charge can no longer be nol prossed. Importantly, Rule 4-247 presupposes the existence of charges that the State may cease prosecuting. For example, the language suggests that "entering a nolle prosequi" has the effect of "terminat[ing] a prosecution on a charge." Rule 4-247(a) also states that "[e]ntering a nolle prosequi" results in "dismiss[al of] the charge." Subsection (b) of the Rule again refers to a "charge," supporting the relationship between nol prossing and charges.

When considering the effect of its entry for a defendant, a nol pros "has the effect of a nonsuit." *Calvert's Lessee v. Eden*, 2 H. & McH. 279, 317 (1789). The effect of a nonsuit means that "the accused remains subject to be proceeded against by another indictment for the same offence." *State v. Morgan*, 33 Md. 44, 46 (1870). In *Barrett*, the Court explained that "[t]he abandonment of the prosecution [by entry of a nol pros] cancels that indictment and restores [the defendant] to his original position." 155 Md. at 638, 142

5

A. at 97; *see State v. Moulden*, 292 Md. 666, 673, 441 A.2d 699, 702–03 (1982) ("Although a stet permits an accused to be proceeded against at a later date under the same charging document, a nolle prosequi does not. The nol pros of a charging document or of a count is 'a final disposition' of the charging document or count[.]") (citing *Barrett v. State*, 155 Md. 636, 142 A. 96 (1928)). Based upon that same reasoning, due to the finality of entering a nol pros on the disposition of a charge, we denied the State the authority to withdraw its entry of a nol pros. *Hooper v. State*, 293 Md. 162, 171, 443 A.2d 86, 91 (1982) ("To permit the State to withdraw a nolle prosequi, or have a nol prossed indictment reinstated, would be flatly inconsistent with the nature of a nolle prosequi under Maryland law.").

*Friend v. State* is the first instance in which we dealt with the possible implications of a nol pros for the State as to whether it may continue prosecuting a defendant after the entry of a nol pros. 175 Md. 352, 2 A.2d 430 (1938). In *Friend*, because the nol pros was ineffective, the defendant was placed in double jeopardy. *Id.* at 355, 2 A.2d at 432 ("The trial and conviction of the appellant, therefore, was valid in law . . . and a second trial for this same offense would be in violation of the common law and of our constitutional prohibition with respect to placing a person in double jeopardy as to the same crime."). This Court in *Boone v. State* refined the previous explanation of the consequences of nol prossing by explaining that a nol pros functions as an acquittal if jeopardy has attached. 3 Md. App. 11, 25–26, 237 A.2d 787, 797 (1968) ("The effect of the entry of a *nolle prosequi* is not inconsistent with this common law meaning. If entered without the consent of the defendant after trial has begun, jeopardy attaches because it operates as an acquittal.") (italics in original). In *Blondes v. State*, the Court then elaborated that "[o]n the other hand,

6

where a nolle prosequi is entered before jeopardy attaches, the State is only precluded from prosecuting the defendant further under that indictment, but the defendant may be proceeded against for the same offense by another indictment or information." 273 Md. 435, 443–44, 330 A.2d 169, 173 (1975) (citing *Barrett v. State*, 155 Md. 636, 142 A. 96 (1928)); *see Gilmer*, 389 Md. at 671–72, 887 A.2d at 557–58 (explicating the temporal significance of the attachment of jeopardy to the consequences of the entry of a nol pros for a defendant). In *Bynum v. State*, we clarified "that the double jeopardy prohibition, though barring subsequent prosecution for offenses charged in counts dismissed by a nolle prosequi entered without the consent of the accused after jeopardy has attached, has no application in the context of the same prosecution which continues on other counts." 277 Md. 703, 709, 357 A.2d 339, 342 (1976).

In *Ward v. State*, we summarized the development of our nol pros jurisprudence. This Court explained that entry of a nol pros after jeopardy had attached does not uniquely invoke double jeopardy principles, but that the principles of double jeopardy did not change when applied in circumstances involving the entry of a nol pros. 290 Md. 76, 97, 427 A.2d 1008, 1020 (1981) ("[T]he Court in *Bynum* was merely stating the general rule that the entry of an uncontested nolle prosequi, after jeopardy attaches, ordinarily precludes a subsequent prosecution for the offense. This general rule is simply an aspect of the basic principle that the double jeopardy clause ordinarily prohibits multiple prosecutions for the same offense.").

In answering a narrower question regarding double jeopardy implications from the entry of a nol pros, we have held that the entry of a nol pros on a lesser offense within an

7

indictment does not preclude further prosecution on the greater offense. *State v. Woodson*, 338 Md. 322, 335–36, 658 A.2d 272, 279 (1995) ("Because an entry of a nolle prosequi on a lesser included offense after jeopardy has attached is only an acquittal on that count for double jeopardy purposes . . . the continuation of the trial on the greater offense is permissible."). Under the common law, the standard for determining whether the entry of the nol pros was unfair and thereby impermissible when applied to a lesser included offense is not just "that the evidence would be sufficient for the jury to convict on that offense; rather, the evidence must also be such that the jury could rationally convict *only* on the lesser included offense." *Burrell v. State*, 340 Md. 426, 434, 667 A.2d 161, 164–65 (1995) (italics in original); *see State v. Smith*, 223 Md. App. 16, 31, 115 A.3d 210, 219 (2015) (describing the standard as whether "the evidence [is] sufficient for the jury to convict on that offense and the evidence [is] such that the jury could rationally convict only on the lesser included offense").

Generally, entering a nolle prosequi is a part of the "broad discretion vested in the State's Attorney." *Food Fair Stores, Inc. v. Joy*, 283 Md. 205, 214, 389 A.2d 874, 879 (1978). Despite our recognition that the State has wide discretion in its choice to enter a nol pros, we have prohibited the State's entry of a nol pros in circumstances where a defendant's right to a speedy trial or a defendant's right to a fair trial has been undermined. First, as we stated in *Curley v. State*:

> We hold, therefore, that when a circuit court criminal case is nol prossed, and the State later has the same charges refiled, the 180-day period for trial prescribed by § 591 and Rule 746 ordinarily begins to run with the arraignment or first appearance of defense counsel under the second prosecution. If, however, it is shown that the nol pros had the purpose or the

> effect of circumventing the requirements of § 591 and Rule 746, the 180-day period will commence to run with the arraignment or first appearance of counsel under the first prosecution.

299 Md. 449, 462, 474 A.2d 502, 508 (1984). Our reasoning was applied by the Court of Special Appeals in *Ross v. State*, where "the State entered the nol pros to circumvent the 180-day limit" and, as a result, the intermediate appellate court vacated the Circuit Court's judgment and dismissed the charges. 117 Md. App. 357, 370–71, 700 A.2d 282, 289 (1997). The Court of Special Appeals again affirmed this exception to the State's authority to enter a nol pros in *Mora v. State* despite holding that it did not apply. 123 Md. App. 699, 722, 720 A.2d 934, 945 (1998).

The second exception we have recognized with respect to the State's authority to enter a nol pros is when the entry of a nol pros undermines a fair trial. *Hook v. State*, 315 Md. 25, 37, 553 A.2d 233, 239 (1989) ("We believe that under the concept of fundamental fairness with respect to a trial in a criminal cause, the broad authority vested in a prosecutor to enter a nolle prosequi may be fettered in the proper circumstances. A case-by-case evaluation is necessary."). "Fundamental fairness essential to the very concept of justice" requires that the entry of a nol pros conforms to "the rudimentary demands of fair procedure" and cannot violate "the civilized standards for [a] fair and impartial trial." *Id.* at 41–42, 553 A.2d at 242 (internal quotations and citations omitted). In *Jackson*, we explained that "the *Hook* principle is not so rare as the impression emitted by the Court of Special Appeals, and although by no means a common occurrence, it may be that it can be invoked to assure a fair trial more often than the Court of Special Appeals suggests." *Jackson v. State*, 322 Md. 117, 128–29, 586 A.2d 6, 11–12 (1991). We reasoned in *Burrell*

9

that "[t]he *Hook* test balances the broad discretion of the State to nolle pros charges with the danger of an unfair jury verdict." 340 Md. at 432, 667 A.2d at 164.

Although we have outlined Maryland's common law with regard to a nolle prosequi, including the general rule of entering, the consequences of entering, and the exceptions for entering, we have yet to define clearly the boundaries of the State's discretion to enter a nolle prosequi, and thus are presented with that question now. This case is not about exceptions to the State's authority, such as whether the State would have authority but for a violation of a defendant's rights, but rather this case concerns whether the State's nol pros authority continues after a defendant has received a final judgment. When confronted with this question, the Wyoming Supreme Court stated:

> "The rule at the common law seems to have been . . . that prior to trial the prosecutor has the absolute uncontrolled power to enter a nolle prosequi; that after the empaneling of the jury until the return of a verdict the power is subject to the control of the court since it may not be used at that time to the prejudice of the defendant; and that following the return of the verdict the uncontrolled power of the prosecutor to enter a nolle revives and continues until such time as judgment is entered and sentence imposed."

*Billis v. State*, 800 P.2d 401, 418 (Wyo. 1990) (citing to *United States v. Brokaw*, 60 F. Supp. 100, 102 (S.D. Ill. 1945) (emphasis in original omitted)). Our past rulings have conformed to these principles, and the Court of Special Appeals has relied on this passage from *Brokaw* as well in *Cross v. State*, describing *Brokaw* as "strongly persuasive." 36 Md. App. 502, 507, 374 A.2d 620, 624 n.1 (1977).[3]

---

[3] We have previously relied on federal criminal procedure when developing our own common law regarding the State's authority to enter a nolle prosequi. *See Ward v. State*, 290 Md. 76, 84, 427 A.2d 1008, 1013 (1981) (citing to *Dealy v. United States*, 152 U.S. 539, 542, 14 S. Ct. 680, 681, 38 L. Ed. 545 (1894), and *Dortch v. United States*, 203 F.2d

In *Hooper*, we tacitly affirmed the State's entry of the nol pros prior to trial. 290 Md. at 163–64, 443 A.2d at 87. The State properly entered nol prosses at the end of the State's case in both *Ward* and *Hook*. *Ward*, 290 Md. at 79, 427 A.2d at 1010; *Hook v. State*, 315 Md. 25, 35, 553 A.2d 233, 238 (1989). We have condoned the State's entry of a nol pros prior to sentencing. *Gilmer*, 389 Md. at 677, 887 A.2d at 562 (holding that the trial court erred when it did not credit the defendant for time served and the charges were nol prossed). Although we have permitted the State to enter a nol pros prior to trial, during trial, and prior to sentencing, we have never before resolved whether the State may enter a nol pros after a final judgment has been reached.

Providing context for the nolle prosequi procedure, *Ward* traced both the historical usage of a nolle prosequi as well as its then-present utilization by the State. *See* 290 Md. at 76, 427 A.2d at 1008. We explained in *Ward* that, since its use in criminal prosecutions in England, "the nolle prosequi has been a means whereby the government exercises control over pending criminal cases." *Id.* at 82–83, 427 A.2d at 1012; *see also State v. Huntley*, 411 Md. 288, 291, 983 A.2d 160, 162 n.4 (2009) ("A nolle prosequi, or nol pros, is an action taken by the State to dismiss pending charges when it determines that it does not intend to prosecute the defendant under a particular indictment."). To enter a nol pros "is an 'abandonment of the prosecution.'" *Ward*, 290 Md. at 83, 427 A.2d at 1012 (citing *Barrett v. State*, 155 Md. 636, 638, 142 A. 96, 97 (1928)). The prosecutor has the discretion to decide whether to enter a nol pros, and may enter a nol pros on all charges against a

709, 710 (6th Cir. 1953), in order to compare the differences between the entry of a nolle prosequi and an acquittal).

11

defendant, on only one charge against a defendant, or even on part of a charge against a defendant. *Id.* Lastly, we explicated in depth that the entry of a nol pros does not effectuate an acquittal of an underlying offense but only of the charge nol prossed. *Id.* at 84, 427 A.2d 1012–13 ("[W]hile a nolle prosequi discharges the defendant on the charging document or count which was nolle prossed, and while it is a bar to any further prosecution under *that* charging document or count, a nolle prosequi is *not* an acquittal or pardon of the underlying offense and does not preclude a prosecution for the same offense under a different charging document or count.") (emphasis in original).

With that history in mind, we consider when, if at all, the State's authority to enter a nol pros on a charge ends. "Cases – particularly criminal cases – have a beginning, and they must, at some point, have an end. . . . A conviction does not occur in a criminal case until sentence is imposed on a verdict of guilty. That is when judgment is entered." *Chmurny v. State*, 392 Md. 159, 167, 896 A.2d 354, 358 (2006) (internal citations omitted). Likewise, "[a] verdict of guilty alone constitutes neither a conviction nor a sentence . . . ." *Id.* at 168, 896 A.2d at 358. A conviction "is the final judgment and sentence rendered by a court pursuant to a verdict or plea of guilty. . . . [A] person is not 'convicted' of an offense until the court enters a judgment upon the verdict of guilty." *Myers v. State*, 303 Md. 639, 645, 496 A.2d 312, 315 (1985). A conviction and imposition of a sentence is, therefore, a final judgment entered on the charges brought against a defendant.

The import of finality in a criminal defendant's case was discussed by the Court of Special Appeals in *Buckner v. State*, 11 Md. App. 55, 59–60, 272 A.2d 828, 831–32 (1971). In that case, the intermediate appellate court detailed the history of a criminal defendant's

12

statutory right to appeal and explained that a criminal defendant may only appeal from a final disposition of the case, after sentencing has occurred. *Id.* at 58-60, 272 A.2d at 831–32. That appeal is a statutory right granted to a defendant upon conviction and sentencing. *See* Md. Code, Courts and Judicial Proceedings § 12-301 (1973, 2013 Repl. Vol.); *see also Cubbage v. State*, 304 Md. 237, 241, 498 A.2d 632, 634 (1985). Section 12-301 of the Courts and Judicial Proceedings Article grants the right of an appeal where appropriate to any party in a civil or criminal case so long as there is a final judgment.

Although the facts of the case before us now differ from the facts in *Ward*, that case nevertheless provides a helpful context for examining the principle of finality after a charge has been nol prossed. The State had charged Ward with five counts, including a charge of accessory to murder and another charge of murder. 290 Md. at 78–79, 427 A.2d at 1010. Prior to the rendering of the jury verdict, the State nol prossed two charges, one of which included the murder charge. *Id.* at 79, 427 A.2d at 1010. The jury found the defendant guilty of the other three charges, including the charge of accessory to murder. *Id.* In a post-conviction proceeding, the Circuit Court dismissed two of the convictions and granted a new trial on the accessory charge. *Id.* Before commencement of the new trial, Ward moved to dismiss the accessory charge on three separate grounds: double jeopardy, speedy trial, and that the common law doctrine of accessoryship rendered the charge legally defective. *Id.* at 80, 427 A.2d at 1010. The Circuit Court agreed that the accessory charge was defective based on common law accessoryship, and it dismissed the charge. *Id.* at 80, 427 A.2d at 1011. The State appealed to the Court of Special Appeals. Prior to any proceedings in that court, we issued a writ of certiorari and reversed the Circuit Court's

13

dismissal. At that time, we did not address the double jeopardy issue. *Ward*, 290 Md. at 81, 427 A.2d at 1011. On remand, the Circuit Court denied Ward's motion to dismiss based upon double jeopardy, and the defendant appealed before the new trial commenced, and this Court issued a writ of certiorari. *Id*.

We then affirmed the Circuit Court, holding that a nol pros applies only to a particular charge and not the underlying act, which may give rise to a different or additional charges. *Id.* at 85, 427 A.2d at 1013 ("[T]here is nothing inherent in the nature of a nolle prosequi which causes its entry to operate as an acquittal of the underlying offense."). In the new trial, the State did not proceed against Ward on the charge of murder, the charge on which the State had entered a nol pros, but rather the State prosecuted Ward as an accessory to murder. *Id.* at 94–95, 427 A.2d at 1018. Double jeopardy principles precluded a second trial on murder or manslaughter, but not the accessory charge. *Id.* at 95, 427 A.2d at 1018.

The circumstances in *Ward* did not provide us the opportunity to examine whether the State may enter a nol pros after a final judgment. *Ward* dealt with the issue of whether double jeopardy attached to a particular charge or the entire underlying offense, whereas the issue squarely before us now is whether the State may enter a nol pros after conviction and sentencing while a defendant's appeal is pending. Notably, the State in *Ward* nol prossed the charges *prior* to Ward's conviction and sentencing, when the case was still pending at the trial stage. *Id.* at 79, 427 A.2d at 1010. Here, unlike in *Ward*, the State nol prossed the underlying charge *after* Mr. Simms had been convicted and sentenced, and while the case was pending on appeal.

In *Hooper*, we attempted to clarify the appropriate method for entering a nol pros. 293 Md. at 167–68, 443 A.2d at 89. We explained that "[a] nolle prosequi is simply the prosecution's abandonment of a charging document, count, or part of a count" that has the effect of "finally terminat[ing]" prosecution of a "particular charging document." *Id.* A nol pros "need not be couched in any particular language or take any specific form; it is the substance of the prosecution's action which controls." *Id.* at 168, 443 A.2d at 89. We recounted in *Hooper* the various ways in which courts had recognized the entry of a nol pros, emphasizing that the "prosecutor's action in light of the circumstances . . . determine[s] whether the action amounts to a nol pros":

> Consequently, an "election" not to prosecute a particular count has been deemed to be a nolle prosequi. The State's motion to amend an indictment by deleting certain matter from two counts on the ground of duplicity was treated as a nolle prosequi of the offenses charged in the deleted material. A motion by the prosecuting attorney to "dismiss" an indictment has been held to be a nolle prosequi, with the further holding that the dismissal could not be set aside by a subsequent order reinstating the indictment. A paper filed by the prosecuting attorney called a "disclaimer" was deemed to be a nolle prosequi [], with the court pointing to "the substance of what was undertaken." The Supreme Court of Indiana [] held that a motion by the prosecuting attorney to "strike the case from the docket" amounted to a nolle prosequi and that, therefore, the trial court erred in later granting the State's motion to reinstate the action.

*Id.* at 168–69, 443 A.2d at 89–90 (internal citations omitted). We then observed that for double jeopardy purposes, while the case was pending an interlocutory appeal, "if jeopardy had attached at the trial, the nol pros on appeal will ordinarily operate as an acquittal of the underlying charges because of double jeopardy principles." *Id.* at 169, 443 A.2d at 90 n.3.

15

*Hooper* simply turned on whether the State could withdraw the entry of a nol pros and, thus, did not address nol prossing in relation to cases on appeal.[4]

*Hooper* came before us on appeal by the State after the trial court dismissed the indictments against the two defendants as duplicitous, before any trial on the merits. 293 Md. at 164, 443 A.2d at 87. The State, during oral argument, moved to dismiss the case by way of nol prossing the appeal. *Id.* at 165, 443 A.2d at 88. In doing so, the State explained that it had filed new charges while the appeal was pending, and, that the State would drop the charges raised on appeal as moot once the trial on the new charges began. *Id.* at 164, 443 A.2d at 87–88. We did not, therefore, address the issue of duplicity. Several weeks later, the State filed a motion to withdraw its motion to dismiss on the basis that the trial on the new charges had been delayed for the immediate future and sought to reinstate the appeal, so that a trial on the old charges could begin. *Id.* at 167, 443 A.2d at 89. Consistent with our decision in *Moulden*, we held that the act of nol prossing was a final termination of a charge, and we did not reinstate the indictments the State had previously nol prossed. *Hooper*, 293 Md. at 171, 443 A.2d at 91.

*Hooper* did not present us with the question we face now. *Hooper* focused on whether the State had authority to withdraw its entry of a nol pros, and we held that the

---

[4] The State contends that the Maryland Constitution, as cited in *Hooper*, supports its argument that a prosecution continues on appeal. Maryland Declaration of Rights, Article V, § 3. It is correct that the Maryland Constitution states generally that the Attorney General has authority to prosecute an appeal, but the provision does not give the State the authority to enter a nol pros to charges underlying a final judgment while the defendant's appeal is pending.

16

State did not have such authority. Here, we deal with the authority of the State, not to withdraw a previously entered nol pros, but to enter a nol pros after the entry of a final judgment in a criminal case. Although the State urges that *Hooper* is dispositive with respect to the State's authority to enter a nol pros on appeal, the difference in when the State entered the nol pros makes *Hooper* inapposite in deciding the case before us. Moreover, the Assistant Attorney General entered a nol pros in *Hooper* during oral argument in this Court by way of moving to dismiss the case because the State had filed a new information against the defendants, charging them with the same crimes. Prior to the entry of the nol pros, the State had not prosecuted the charges filed against the defendants, except to the extent that the trial court dismissed the indictments, creating the initial impetus for the appeal. The withdrawal of the nol pros and reinstatement of the indictments in *Hooper* was the sole issue on appeal. To the contrary, in Mr. Simms' case, the State prosecuted the charges against Mr. Simms. Not only had the charges been prosecuted, but Mr. Simms was convicted and sentenced, and he appealed the conviction and sentence. The appeal initiated by Mr. Simms in the Court of Special Appeals related to the sufficiency of the evidence against him that resulted in his conviction, as well as whether the hearing judge's denial of a motion to suppress was in error. The nol pros only became an issue on appeal as a result of procedural maneuvering by the State while the appeal was pending in the Court of Special Appeals.

*Hooper* cited to *Friend* for support of its discussion regarding the appropriate procedural technique for nol prossing an appeal. In *Hooper* we stated that "it would seem that a nol pros of a case pending on appeal should normally be done in the appellate court

17

in which the appeal is pending at the time." 293 Md. 162, 169, 443 A.2d 86, 90 n.3 (1982). This observation, buried in a footnote, referred to nol prossing a pending *interlocutory* appeal, not nol prossing at the appellate stage on a charge underling a *final judgment* after conviction and sentencing. The appeal arose out of dismissal of the indictments before any prosecution of the charges had begun. Furthermore, our commentary in the footnote was unnecessary to resolve *Hooper* and, therefore, was merely dicta.

A careful reading of *Friend* reveals, however, that the case provides no support for the broad interpretation of footnote three found in *Hooper* that the State urges us to adopt. In *Friend*, a justice of the peace had issued a warrant charging the defendant with receiving stolen goods, and during a trial before the justice of the peace, the defendant was convicted and sentenced. 175 Md. at 353, 2 A.2d at 431. The defendant appealed his conviction to the Circuit Court, and while the appeal was pending, the State procured an indictment charging the defendant with the same crime with which the defendant had already been convicted. *Id.* The State sought the second indictment presumably because it believed that the justice of the peace lacked jurisdiction in the first proceeding. *See id.* at 355, 2 A.2d at 432. The State attempted to nol pros the charges underlying the defendant's first conviction of receiving stolen goods then proceeded to try the defendant on the new indictment in the Circuit Court, which resulted in a second conviction for the same crime. *Id.* at 353–54, 2 A.2d at 431. The defendant raised the issue of double jeopardy on appeal, and we reversed the second conviction. *Id.* at 356, 2 A.2d at 432. We determined that the nol pros was improper, ineffective, and therefore placed the defendant in double jeopardy. *Id.* at 356, 2 A.2d at 432.

18

The State suggests that *Friend* stood for a tacit acceptance of entering a nol pros of charges on appeal, and because *Hooper* discussed *Friend* in support of entering a nol pros of charges on appeal, the footnoted language in *Hooper* should be read broadly to permit the State's authority to nol pros, in effect, *any* appeal. We did not, as the State suggests, tacitly accept in *Friend* that the State has the authority to nol pros a charge underlying a conviction and sentence on appeal. 175 Md. at 356, 2 A.2d at 432 (stating that "[t]he nolle prosequi . . . was improper and ineffective"). Although *Hooper* did permit the State to nol pros charges pending on appeal, that holding was limited to the specific circumstance of the State's interlocutory appeal, prior to a final judgment on the charges against the defendant.

Although both parties in the case before us attempt to distinguish *Friend* from the present case, *Friend* provides valuable guidance for answering the question raised here. We explained in *Friend* that "[w]hen the indictment was found[,] the case stood on the appeal docket for trial, by order of the defendant, and the State had no authority to dismiss this appeal. That was the right of the accused[.]" *Id.* at 355, 2 A.2d at 432. Later, we reiterated that "[t]he State having no authority to dismiss the defendant's appeal, the entering of a nolle prosequi could not be construed as a dismissal of it. The nolle prosequi, if it could be legally entered, would effect a final disposition of the entire prosecution originating before the justice of the peace[.]" *Id.* at 355–56, 2 A.2d at 432. Lastly, we stated, "The nolle prosequi . . . under the circumstances of this case was improper and ineffective, and left undisposed of the case pending on his appeal, and his trial and

19

conviction in the Circuit Court . . . placed this defendant in double jeopardy[.]" *Id.* at 356, 2 A.2d at 432.

Because the State did not have the authority to enter a nol pros on appeal, the defendant had been convicted twice of the same charge, and our inquiry in *Friend* ended there. *Ward*, 290 Md. at 91, 427 A.2d at 1016 ("*Friend* was based entirely on the application of double jeopardy principles."). We proceeded on the assumption that, because the State lacked the authority to nol pros the appeal, the original conviction and sentence for receiving stolen goods remained, pending the appeal, while the defendant had received a second conviction and sentence for receiving stolen goods, a clear violation of double jeopardy principles. *Friend*, 175 Md. at 356, 2 A.2d at 432. The Court determined that the defendant had been placed in double jeopardy only because the nol pros, which had been entered during the appeal of the original judgment, was an "improper" and "ineffective" use of the State's authority. *Id.*

Despite different procedural contexts, *Friend* shares several critical facts with the case before us. The justice of the peace convicted the defendant in *Friend*, and as a statutory right, the defendant pursued an appeal of his conviction.[5] As the defendant awaited review of his appeal, the State attempted to nol pros the appeal, which we held the State had no authority to do. *Id.* Here, the trial judge convicted and sentenced Mr. Simms,

---

[5] That the appeal in *Friend* fell under a *de novo* standard of review does not alter the critical holding of the case; namely, the entry of a nol pros was a nullity because the defendant had initiated an appeal of his conviction and sentence. The State had no authority in *Friend* to do so, as it lacks the authority here to nol pros while Mr. Simms' appeal was pending before the Court of Special Appeals.

and Mr. Simms appealed, pursuant to his statutory right. While Mr. Simms awaited appellate review of his case, the State sought to abandon the prosecution of the appeal by filing a motion to dismiss.

The State suggests that we should limit the reach of *Friend* and, in support, points us to one phrase in the following statement in *Friend*:

> The nolle prosequi, entered without the consent of the accused, under the circumstances of this case was improper and ineffective, and left undisposed of the case pending on his appeal, and his trial and conviction in the Circuit Court for Caroline County for the same offense, under the circumstances above related, placed this defendant in double jeopardy, contrary to the common law and our constitutional provisions.

175 Md. at 356, 2 A.2d at 432. The State argues that "consent of the accused" is the dispositive phrase in the above passage from *Friend*. In effect, the State urges the Court to adopt an interpretation of the passage that would grant the State the authority to nol pros an appeal when the defendant consents, or waives objection, to the entry of the nol pros. The State cites to no authority to support its proposition that a defendant waives the right to appeal by failing to object to the entry of a nol pros. Nevertheless, this interpretation of *Friend* fails because it is not grounded in the history of our nol pros jurisprudence.

In order to understand the specific phrase in *Friend*, we look to cases decided before *Friend*. We explore the source for the language "without the consent of the accused" because *Friend* did not include a citation. *Ward* and *Blondes* contextualized the line "without the consent of the accused" to cases involving double jeopardy, the issue before the Court in *Friend*. *See Ward*, 290 Md. at 85–6, 427 A.2d at 1013–14; *Blondes*, 273 Md. at 443, 330 A.2d at 173. Both cases cite to *United States v. Shoemaker*, which held that

21

"[i]t is a rule in criminal proceedings that nothing shall be done, within in [sic] discretion of the court, to the prejudice of the defendant. And, hence, in some instances, where his interests may, possibly, be injuriously affected by an order, his consent is necessary." 27 F. Cas. 1067, 1079, 2 McClean 114 (Cir. Ct. D. Ill. 1840). Additionally, *Ward* cited to *Commonwealth v. Tuck*, 37 Mass. 356, 364–65 (1838), which held that the State may enter a nolle prosequi without the consent of the defendant before a jury has been impaneled or after a verdict, but after a jury has been impaneled, it may enter a nolle prosequi only with the consent of the defendant. *See id.* at 366 ("This practice of entering a *nolle prosequi* after verdict, has prevailed without objection for many years. . . . [The court] will take care that it shall not operate to the prejudice of the defendant's rights.") (italics in original). This language is in reference to aspects of the common law about the timing of the entry of a nol pros and portends possible double jeopardy issues with the entry of a nol pros. *Id.* at 365–66. Although the concerns of Mr. Simms as to being placed in jeopardy are significant, the issue of double jeopardy is not before us as the State has not tried to prosecute Mr. Simms a second time on the charge that was nol prossed.

As we have done previously,[6] we review case law from the Supreme Judicial Court of Massachusetts in developing our own nolle prosequi jurisprudence. Despite factual

---

[6] We have previously relied upon Massachusetts decisions in the development of our own nolle prosequi jurisprudence. *See State v. Morgan*, 33 Md. 44, 46 (1870) (citing to *Commonwealth v. Wheeler* and *Commonwealth v. Briggs*); *Friend v. State*, 175 Md. 352, 354, 2 A.2d 430, 431 (1938) (citing to *Commonwealth v. Cunningham*); *Ward v. State*, 290 Md. 76, 84, 427 A.2d 1008, 1013 (1981) (citing to *Commonwealth v. Briggs*, *Commonwealth v. Tuck*, and *Commonwealth v. Wheeler*); *Hooper v. State*, 293 Md. 162, 168, 443 A.2d 86, 89 (1982) (citing to *Commonwealth v. Hart*).

22

differences between the present case and *Commonwealth v. Dascalakis*, 140 N.E. 470 (Mass. 1923) (abrogated on different grounds by *Commonwealth v. Bly*, 830 N.E.2d 1048 (Mass. 2005)), the latter case, *Dascalakis*, espoused legal principles defining a limit on the prosecutorial discretion to enter a nol pros after a final judgment. "The very nature of the term [nolle prosequi] shows that it cannot spring into existence until a criminal proceeding has been commenced by some process in court, either complaint or indictment. It cannot remain in existence after a criminal prosecution has come to an end." *Id.* at 473. The court held that "[t]he power of the court over a prosecution for crime is bounded by a final judgment. Sentence is final judgment in a criminal case. That is the end of the case[.]" *Id.* Lastly, the court stated that "the power of the prosecuting officer cannot continue after the power of the court to deal with the case under its general jurisdiction is over. . . . [T]he entry of a nolle prosequi cannot be made after judgment." *Id.* The nol pros principles on which *Dascalakis* was decided remain good law in Massachusetts. *See Commonwealth v. Harris*, 916 N.E.2d 396, 403 (Mass. App. Ct. 2009) ("While the power to exercise a nolle prosequi is absolute before trial, it is limited once trial has begun and will have the effect of an acquittal if exercised after that time without the consent of the defendant. However, the power of the prosecutor to enter a nolle prosequi is revived after a verdict and remains until the imposition of sentence.") (internal citations omitted).

Massachusetts is not outside the norm in limiting the scope of the State's authority to enter a nol pros after a final judgment as other courts have held similarly. *See Billis*, 800 P.2d at 418 ("[T]he uncontrolled power of the prosecutor to enter a nolle revives and continues until such time as judgment is entered and sentence imposed."); *State ex rel.*

23

*Norwood v. Drumm*, 691 S.W.2d 238, 240 (Mo. 1985) ("[V]ery few of the cases from other jurisdictions, and none of the Missouri decisions, involve entry of a nolle prosequi after verdict. . . . The Court declines to accept respondent's invitation to adopt a rule [permitting entry of a nol pros after conviction] . . . because . . . compelling considerations justify conditioning exercise of the authority of the prosecuting attorney to nolle prosequi after verdict."); *State v. Charles*, 190 S.E. 466, 468 (S.C. 1937) ("[A] nolle prosequi may be entered, namely, before the jury is impaneled, while the case is before the jury, and after the verdict."); *In re Cain*, 209 F. 40, 42 (1913) ("'It is well established, therefore, that the prosecuting officer may enter a nolle prosequi before final judgment, notwithstanding the mandate of an Appellate Court[.]'") (internal citation omitted). Additionally, other courts have cited to *Dscalakis* in forming their own nolle prosequi jurisprudence. *See Norwood*, 691 S.W.2d at 240 (limiting the scope of the State's authority to enter a nol pros); *District of Columbia v. Weams*, 208 A.2d 617, 618 (D.C. 1965) (explaining judicially-imposed restraints on the State's authority to enter a nol pros).

Consistent with the legal principles in *Friend* and *Dascalakis,* we hold that the State does not have the authority to enter a nol pros after a final judgment has been entered against a defendant in a criminal case. The mere fact that the State has entered a nol pros to underlying charges of a conviction does not alter the existence of a final judgment, i.e. a conviction and sentence entered against the defendant. The State had no authority to use its power to nol pros to alter a final judgment entered in favor of or against a criminal defendant. Final judgment is the boundary of the State's discretion to enter a nolle prosequi.

24

Despite the State's characterization of expediting justice for the defendant by having him released as a result of the entry of the nol pros as opposed to waiting for the appellate process to finish, the State's efforts tended to circumvent the right of Mr. Simms to appeal his conviction and sentence. Upon receiving final judgment, Mr. Simms chose to exercise his statutorily-granted right to appeal his conviction and sentence. The State does not contest that the appeal had been perfected and the matter was pending argument in the Court of Special Appeals. As explained in *Friend*, "[w]hen the indictment was found[,] the case stood on the appeal docket for trial, by order of the defendant, and the State had no authority to dismiss this appeal. That was the right of the accused[.]" 175 Md. at 355, 2 A.2d at 432. We agree with the Court of Special Appeals that, when a criminal defendant has appealed the conviction and sentence, the State may not employ its nol pros authority to enter a final judgment and thereby dismiss the appeal.

Once a case reaches final judgment in a proceeding, and a party appeals that judgment, the issue "comes within the exclusive jurisdiction of the appellate court." *Irvin v. State*, 276 Md. 168, 172–73, 344 A.2d 418, 421 (1975). Jurisdiction to judge the appeal shifts from the Circuit Court to the appellate court. *Raimondi v. State*, 8 Md. App. 468, 475, 261 A.2d 40, 43–44 (1970) ("[T]he perfecting of an appeal brings the subject matter thereof within the exclusive jurisdiction of the appellate court and suspends the authority of the lower court over it during the pendency of the appeal[.]"). Because Mr. Simms appealed his conviction and sentence, the trial court had no jurisdiction to alter the conviction or sentence by relying on the State's nol pros authority. *But see* Md. Rule 4-331(b)(1)(B) ("The court has revisory power and control over the judgment to set aside an

25

unjust or improper verdict and grant a new trial . . . on motion filed within 90 days after [the Circuit Court's] imposition of sentence."); Md. Rule 4-345(e)(1) ("Upon a motion filed within 90 days after imposition of a sentence . . . the court has revisory power over the sentence[.]").   In the present case, the nol pros entered in the trial court as to the charge underlying the conviction and sentence was simply a nullity, "improper" and therefore "ineffective."  *See Friend*, 175 Md. at 356, 2 A.2d at 432.  In this case, the State was not attempting to nol pros charges but rather sought to erase a conviction and sentence, and in doing so attempted an end run around the appellate process.  Succinctly, the State did not and does not have the authority to alter a final judgment under Rule 4-247.

The State has presented no justification for its assertion that it has the authority to enter a nolle prosequi of a charge underlying a conviction and sentence.  It contends that because Rule 4-247 lacks a specific limitation, the State has authority to enter a nol pros at any point.  The State explains that the only limitation on its authority to nol pros is when entry of a nol pros contravenes justice, and here, entry of the nol pros did not cause any injustice to Mr. Simms.  According to the State, because Mr. Simms received efficient justice by his prompt release from prison as a result of the State's decision to enter a nol pros, the exercise of its authority was proper.  Furthermore, the State contends that this Court has yet to expressly deny the State this authority by pointing to *Friend*, *Ward*, *Cross*,[7]

---

[7] In *Cross v. State*, 282 Md. 468, 386 A.2d 757 (1978), we were not presented on appeal the issue of whether the State's entry of a nol pros was legally correct.  The case was not yet on appeal when the State entered the nol pros, making the facts of the present case distinct from those before us in *Cross*.

26

and *Hooper*. To be sure, we do so now and clarify in this case that the State does not have the authority to enter a nol pros of a charge that has resulted in a final judgment.

Additionally, the State argues that Mr. Simms failed to object to the entry of the nol pros and that his lack of objection was, in effect, an agreement with the abandonment of the prosecution. First, the trial court lacked jurisdiction to enter the nol pros, making the nol pros ineffective, regardless of Mr. Simms' failure to object. Second, at no time did Mr. Simms waive his right to appeal, nor does the record demonstrate that Mr. Simms appreciated that failing to object meant that he could no longer pursue his appeal. The notion that the defendant ought to object to entry of a nol pros goes against the letter and the spirit of Rule 4-247(a) as the Rule does not even require the defendant's presence in court at the time of entry of a nol pros. Notwithstanding, we need not decide whether Mr. Simms needed to object to the State's action, or whether the lack of objection equates to an agreement by Mr. Simms, because the State lacked the authority to alter the final judgment against Mr. Simms via the State's nol pros authority.

We reject the State's suggestion that its power to nol pros may divest a criminal defendant of his or her right to appeal a final judgment. In this case, Mr. Simms' interest in the outcome of his appeal, specifically a determination of whether the trial court properly ruled on his suppression motion and whether there was sufficient evidence to convict him, were not controlled by the prosecuting attorneys. That the State has not yet re-charged Mr. Simms, or does not intend to charge Mr. Simms with a different crime, does not alter Mr. Simms' right to appeal.

The State maintains that it should not be saddled with prosecuting meritless appeals. This contention again is unpersuasive. The State has several options on appeal, such as conceding error or by filing no arguments with the appellate court. The State ignores the fact that it was saddled with prosecuting a meritless appeal in this case because of a self-inflicted error in the trial court. The most important step for preventing the State from having to prosecute the appeal in this case would have been to have charged Mr. Simms with a crime supported by the evidence against him. In limiting the State's authority to enter a nol pros to the period prior to a final judgment, we do not mandate that the State, knowing there is insufficient evidence to support a conviction against a criminal defendant, must proceed in arguing in favor of that conviction on appeal.

**III.**

In conclusion, we hold that, after a defendant has received a final judgment in the form of a conviction and sentencing, the State may not enter a nolle prosequi to alter the final judgment. Upon conviction and sentencing based upon an underlying charge, the underlying charge is no longer pending and the State's authority to enter a nol pros has ended. Final judgment terminates the case in the trial court. Mr. Simms was convicted and sentenced. Therefore, the State lacked the authority to nol pros in order to alter the final judgment or to eliminate the appellate process initiated by Mr. Simms.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT TO BE PAID BY PETITIONER.**

28