REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1942

September Term, 2015

_____

LEONARD LEE SIMMS

v.

STATE OF MARYLAND

_____

Kehoe,
Nazarian,
Eyler, James R.
    (Senior Judge, Specially Assigned)

JJ.

_____

Opinion by Nazarian, J.

_____

Filed:  March 3, 2017

This seemingly straightforward drug case has morphed into a criminal procedure exam question. Leonard Lee Simms was charged in the Circuit Court for Anne Arundel County with theft of services from a hotel and with possession with intent to distribute heroin, possession of heroin, possession with intent to distribute ethylone,[1] possession of ethylone, possession of cocaine, and conspiracy to distribute heroin (this last charge was later amended to conspiracy to distribute methylenedioxymethamphetamine ("MDMA")). After an unsuccessful suppression hearing, Mr. Simms proceeded to trial on an agreed statement of facts on one count of conspiracy to distribute MDMA. The court found Mr. Simms guilty on that one count and the State entered a *nolle prosequi* ("*nol pros*") on the remainder.

Mr. Simms appealed, challenging the court's decision not to suppress the evidence collected from him and his colleague and arguing that the evidence was insufficient as a matter of law to convict him. While the appeal was pending, the State entered a new *nol pros* on the count for which Mr. Simms had been convicted, *i.e.*, conspiracy to distribute MDMA. Mr. Simms was released from custody, and the State filed a Motion to Dismiss the appeal on the grounds that the *nol pros* rendered it moot. On the merits, the State argues that Mr. Simms lacks standing to challenge the search of his colleague's bag, which contained heroin and cocaine, and that the trial court correctly denied the motion to

---

[1] Ethylone is one of a group of synthetic cathinones, "emerging drugs of abuse with central nervous system-stimulant properties similar to cocaine, 3,4-methylenedixmymethamphetamine (MDMA) and other conventional amphetamines (1,2)." Dayong Lee *et al*., *Ethylone-Related Deaths: Toxicological Findings*, 39 J. OF ANALYTICAL TOXICOLOGY 567, 567 (2015).

suppress. And although the State agrees with Mr. Simms that the evidence was insufficient to sustain the conviction for conspiracy to distribute MDMA, it argues that the conviction should simply be vacated. We hold that the appeal is not moot and that the insufficiency of the evidence supporting Mr. Simms's conviction for conspiracy to distribute MDMA requires that we reverse it.

## I. BACKGROUND

On February 9, 2015, around 4:00 PM, Corporal Chris Rajcsok of the Anne Arundel County Police Department responded to a call regarding a theft of services from the Sheraton Hotel in Annapolis. When he arrived, he met with two hotel employees who told him that guests had complained about people going in and out of one of the rooms. After investigating, the employees discovered that the room was one out of which guests had been ejected a few days earlier. The hotel employees went upstairs and saw four African-American males leaving the room and fleeing the hotel toward The Mall in Annapolis. The employees identified the men as the same individuals they had ejected from the hotel previously, and they gave the Corporal descriptions of two of the suspects: both were African-American men, one wore a black hoodie with gray accents, and the other was shorter and had face tattoos.

Corporal Rajcsok drove to the mall, parked, and went into the food court, where he saw two African-American men who fit the descriptions of the suspects. When the Corporal approached the two men, they were seated facing each other at two small adjoining tables, eating food from Chick-fil-A. Corporal Rajcsok asked to see identification. One of the men, Tahzay Brown, gave the Corporal his driver's license; the

2

other, later identified as Mr. Simms, explained that he did not have ID. Mr. Simms continued to eat and spoke quietly in response to the Corporal's questions.

While the Corporal was attempting to get Mr. Simms's information, Mr. Brown ran out of the mall. The Corporal gave chase and eventually detained and handcuffed Mr. Brown just outside. Backup officers arrived shortly thereafter, and Corporal Rajcsok went back inside to see if Mr. Simms was still there.

In fact, Mr. Simms was seated exactly where he had been when the Corporal left, still eating. The Corporal placed Mr. Simms in handcuffs and brought him outside, where Mr. Brown was being detained and guarded. He then went back to the table where the two men had been and searched the area. On the table, in front of the chair where Mr. Simms had been sitting, he found a Chick-fil-A bag that had been folded flat, with waffle fries on top. In the middle of the other table where Mr. Brown had been sitting, he found another Chick-fil-A bag, that one standing up with the waffle fries inside. He searched both bags and found no contraband in the first, but found in the second a clear plastic bag that held eleven smaller bags containing a brown powder substance that resembled heroin and another plastic bag that contained a white powder (later determined to be cocaine).

After searching the area, Corporal Rajcsok asked several people in the vicinity if they had seen Mr. Simms go anywhere or put anything anywhere, and was told that Mr. Simms had shoved his hands down his pants. The Corporal recovered the evidence and went outside to where Mr. Simms and Mr. Brown were being detained. By then, an employee from the hotel had arrived and identified both men as the ones who had previously been kicked out of the hotel room and who had fled the room that day.

3

Officers took Mr. Simms to the Southern District station for processing. Because Mr. Simms was seen putting his hands down his pants, Corporal Rajcsok conducted a strip search and recovered several bags from Mr. Simms's inner gluteal cleft: one clear bag that contained seven smaller plastic bags holding an opaque off-white rock-like substance (later identified as ethylone); one small clear bag containing white powder (later found to be innocuous); and one small bag containing green plant material (believed to be marijuana, but never tested). The State charged Mr. Simms with theft, possession with intent to distribute heroin, possession of heroin, possession with intent to distribute ethylone, possession of ethylone, possession of cocaine, and conspiracy to distribute heroin.

Mr. Simms filed a motion to suppress all of the drug evidence, and his motion was heard and denied on May 27, 2015. On November 5, 2015, the State amended the drug listed in count seven of the indictment, conspiracy to distribute a narcotic, from heroin to MDMA. Mr. Simms went to trial on an agreed statement of facts on one count of conspiracy to distribute MDMA, and at the conclusion of the trial the court found Mr. Simms guilty. On November 9, 2015, the court imposed the agreed-upon sentence of four years in prison, and the State then entered a *nol pros* for the remaining charges.

Mr. Simms filed a timely notice of appeal and filed his brief in this Court. While this appeal was pending, though, the State entered a *nol pros* as to the one count for which Mr. Simms had been convicted, and Mr. Simms was released from prison. The State filed a Motion to Dismiss the appeal that Mr. Simms opposed in his Reply Brief.

## II. DISCUSSION

Mr. Simms raises two issues in his brief, which he filed before the State *nol prossed* the conspiracy to distribute MDMA charge (and conviction).[2] *First*, he contends that the trial court erred in denying his motion to suppress evidence because his arrest was not supported by probable cause and because the warrantless arrest violated Section 2-203 of the Maryland Criminal Procedure Article ("CP"). *Second*, he argues that the evidence was insufficient to sustain the conviction. The State responds that the case is moot because the *nol pros* eliminated any remedy we could provide to Mr. Simms. The State disputes Mr. Simms's challenges to the suppression decisions. The State agrees that the evidence was insufficient to sustain the conviction, but asks us to vacate the conviction rather than reverse it.

We need to take the issues in a different order—first, to determine whether the appeal is moot and then, if not, what is left to decide.

### A. This Appeal Is Not Moot.

Before we can consider Mr. Simm's challenges to his conviction, we must address the State's motion to dismiss this appeal, and specifically its contention that the appeal is moot because, while it was pending, the State *nol prossed* the one count on which Mr. Simms had been convicted. Because jeopardy had attached for all charges in the underlying indictment, the State argues, the *post hoc nol pros* eliminates the possibility that we could provide Mr. Simms an effective remedy. Mr. Simms characterizes the *nol pros*

---

[2] In his brief Mr. Simms phrased the Questions Presented as follows:
    1.     Did the lower court err in denying the motion to suppress?
    2.     Was the evidence insufficient to sustain the conviction?

here as a "legal nullity," and argues that we could provide an effective remedy by deciding the suppression issue. We agree with Mr. Simms that the *nol pros* after conviction doesn't insulate his conviction from review, although we then have to decide what, if any, charges could survive after the series of the post-jeopardy *nol prosses* the State entered in this case.

"A question is moot if, at the time it is before the court, there is no longer an existing controversy between the parties, so that there is no longer any effective remedy which the court can provide." *Attorney Gen. v. Anne Arundel Cty. Sch. Bus Contractors Ass'n.,* 286 Md. 324, 327 (1979) (citations omitted). "It is well settled that appellate courts do not sit to give opinions on abstract propositions or moot questions, and appeals which present nothing else for decision are dismissed as a matter of course." *Cottman v. State*, 395 Md. 729, 744 (2006) (internal citations and quotations omitted).

The potential remedies here flow from what a *nol pros* is and isn't, which in turn depends on when it was entered. A *nol pros is* an act of prosecutorial discretion—"an abandonment of the prosecution or a discontinuance of a prosecution by the authorized attorney for the state." *Ward v. State*, 290 Md. 76, 83 (1981) (internal citations and quotations omitted). Maryland Rule 4-247(a) provides that the State's Attorney may terminate a prosecution on a charge and dismiss the charge by entering a *nol pros* on the record in open court. But although "[t]he entry of a nolle prosequi is generally within the sole discretion of the prosecuting attorney, free from judicial control and not dependent upon the defendant's consent," *Ward*, 290 Md. at 83, "[t]he prosecutor's power is not absolute." *Hook v. State*, 315 Md. 25, 36 (1989) (internal citations omitted) (the State denied the defendant fundamental fairness by *nol prossing* the second-degree murder count

6

and leaving the jury no choice but to convict of first-degree murder or acquit); *see also Ward*, 290 Md. at 83 ("[T]he prosecution cannot, by a nolle pros of part of a count, change the entire nature of the offense charged.") (citation omitted); *Simmons v. State*, 165 Md. 155, 165 (1933) (indicating that the trial court may or may not permit the entry of a *nol pros* in order to prevent injustice).

And a *nol pros* is *not*, as the State contends, the equivalent of an acquittal. A *nol pros* entered after jeopardy has attached precludes a later indictment and trial on that particular charge, but not as to other charges that otherwise wouldn't be precluded by double jeopardy principles. *Hooper v. State*, 293 Md. 162, 163–70 (1982) (*nol pros* entered during appeal from dismissed indictments because State was proceeding to trial on new information alleging the same crimes); *Ward*, 290 Md. at 94–100; *cf. Bravo-Fernandez v. United States*, 580 U.S. ___, No. 15-537, slip op. at 12–19 (Nov. 29, 2016) (acquittal on companion charge doesn't preclude retrial after judgment of guilt is vacated on procedural grounds). Because the other charges in Mr. Simms's indictment were *nol prossed* after he was tried and convicted only for conspiracy to distribute MDMA,[3] and after the court received the agreed statement of facts, *see State v. Taylor*, 371 Md. 617, 644 (2002), *State v. Shaw*, 282 Md. 231, 237 (1978), we agree with the State that those charges could not be resurrected. But the flagship charge has an added wrinkle that none of the cases on which the State relies shares: the *nol pros* for conspiracy to distribute MDMA was entered not

---

[3] These were, again: theft, possession with intent to distribute heroin, possession of heroin, possession with intent to distribute ethylone, possession of ethylone, and possession of cocaine.

merely after jeopardy attached, but after *conviction*. *Compare State v. Martin*, 367 Md. 53, 56 (2001) (*nol pros* entered at the conclusion of the State's case); *Ward,* 290 Md. at 76 (*nol pros* entered at the close of the State's case); *Bynum v. State*, 277 Md. 703, 704–05 (1976) (*nol pros* entered at the conclusion of all testimony); *Blondes v. State*, 273 Md. 435, 446 (1975) (*nol pros* entered after trial had begun and jeopardy had attached).

No Maryland case has addressed this particular question,[4] but we hold that a post-conviction *nol pros* is ineffective because if this maneuver worked, it could give the State a mechanism to insulate a defective conviction, and the errors rendering it defective, from appellate review. The State's motion doesn't say directly why it *nol prossed* the case at this stage. But there is an obvious coincidence in timing between the *nol pros* and the State's concession here that the evidence was insufficient to sustain the conviction for conspiracy to distribute MDMA, which raises the question, unanswered in its brief, why the State proceeded in this fashion. If we were to find the case moot, could the State re-indict Mr. Simms on a new set of charges arising from the same facts—for example, a conspiracy to distribute ethylone, which has never been charged, or charges relating to the marijuana found during the strip search? The answer to that question could depend on our answers to the other issues on appeal: for example, we were to find that the evidence obtained in the search should have been suppressed, or that the evidence was insufficient

---

[4] Some out-of-state cases have held that post-conviction or post-sentencing *nol prosses* were ineffective, *see, e.g., Louisiana v. Moise*, 18 So. 943, 955-56 (La. 1895); *Massachusetts v. Dascalakis*, 140 N.E. 470, 473 (Mass. 1923); *Tennessee v. Fleming*, 26 Tenn. 152, 154 (1846), but the situation doesn't appear to arise very often at the appellate level.

to sustain the conviction, those rulings could shape the opportunity, if any, for the State to prosecute Mr. Simms anew.

We assume that the State had appropriate reasons for proceeding as it did and don't ascribe any nefarious motives. Even so, we are not persuaded that the controversy has terminated or that there is no remedy we could provide to Mr. Simms were he to prevail. The appeal is not moot, and we proceed to the merits.

### B. The Conviction For Conspiracy To Distribute MDMA Must Be Reversed.

This brings us to the charge on which Mr. Simms was convicted, conspiracy to distribute MDMA. Mr. Simms argues, and the State concedes, that the evidence in support of his conviction was insufficient as a matter of law—the agreed Statement of Facts on which the conviction was based contained no evidence relating to MDMA, the drug he allegedly conspired to distribute, only evidence relating to an altogether different drug (ethylone). The parties differ, though, on what we should do in response. The State contends that the conviction should be vacated, and Mr. Simms says we should reverse it.

We agree with Mr. Simms. The State charged Mr. Simms with conspiracy to distribute MDMA (after amending the indictment, which originally charged a conspiracy to distribute heroin), and the parties agreed to a Statement of Facts that was, by all accounts, legally insufficient. The shortfall is not procedural, but substantive, and Mr. Simms should not be subject to the possibility of re-trial on that charge. *See Titus v. State*, 423 Md. 548, 573 (2011) (reversing conviction when evidence was insufficient to establish conviction

9

beyond a reasonable doubt). And because that was the only charge for which he was convicted, that ends our inquiry.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED. COSTS TO BE PAID BY ANNE ARUNDEL COUNTY.**

10