*Anthony Thomas Hughes v. State of Maryland*, Nos. 325 and 331, September Term, 2017. Argued: February 1, 2018.  Opinion by Sharer, J.

## CRIMINAL PROCEDURE – APPEALS – ILLEGAL SENTENCE – SCOPE OF REVIEW

Appellant's application for leave to appeal challenging the post-conviction court's choice of remedies to correct an illegal sentence does not prevent an appellate court from reviewing the post-conviction court's underlying factual determination that the sentence was illegal and its decision to grant appellant partial relief.

Pursuant to Maryland Rule 8-131(a), appellate courts may review any issues raised in or decided by lower courts.  As such, the post-conviction court's finding that the sentence imposed for one count in a five-count plea agreement did not conform to the agreement was subject to review when appellant challenged whether the remedy afforded by the post-conviction court to correct the illegality was appropriate.  When there is a challenge to the choice of remedies afforded to correct an illegal sentence, an appellate court may review both the remedy and the underlying determination of the illegality of the sentence.

## CRIMINAL PROCEDURE – POST-CONVICTION – ILLEGAL SENTENCE – REMEDY – BENEFIT OF THE BARGAIN

A post-conviction challenge to the legality of only a single sentence for one count of a multi-count plea agreement does not require a court to strike the entire plea agreement in order to correct the illegality.  Pursuant to Maryland Rule 4-345(a), a court "may correct an illegal sentence at any time."  The post-conviction court determined that the sentence challenged by appellant exceeded the sentencing cap imposed by the plea agreement and struck only the sentence and conviction of the non-conforming count, rather than striking the entire plea agreement, as appellant sought.

On appeal this Court held that the post-conviction court's decision to strike the sentence and conviction for only the non-conforming count of the plea agreement corrected the illegality and restored appellant to the benefit of his bargain of the plea agreement, while preserving the finality of the unchallenged and legal sentences on the four remaining counts of the plea.  The resolution of the illegality in appellants favor was legally correct and was an equitable and reasonable remedy.

Circuit Court for Carroll County
Case No. 06-K-03-029949

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

Nos. 325 & 331

September Term, 2017

_____

ANTHONY THOMAS HUGHES

v.

STATE OF MARYLAND

_____

Berger,
Friedman,
Sharer, J. Frederick
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Sharer, J.

_____

Filed: November 7, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

**PREFACE**

In 2003, Anthony Thomas Hughes, appellant, was charged in the Circuit Court for Carroll County, in a 25-count indictment relating to violent offenses involving four victims.[1] He entered a plea of not guilty and proceeded to trial on an agreed statement of facts, resulting in conviction on all counts. On direct appeal, this Court reversed and ordered a new trial.[2] On November 14, 2005, prior to the ordered new trial, Hughes entered into a plea agreement, the details of which we shall recount, *infra*. It is that agreement, and the trial court's implementation of it, that has given rise to this appeal.

In 2012, Hughes filed, *pro se*, a Motion to Correct Illegal Sentence, contending that he did not agree to what he characterized as a 75-year sentence. The motion was summarily denied, and Hughes noted an appeal, which, consequently, mirrored his motion and was not treated or acted on as an appeal. On February 10, 2016, Hughes, through counsel, filed a petition for post-conviction relief, again challenging the legality of the sentence based on an alleged breach of the plea agreement by the State and the trial court. Following a hearing, the court granted relief in part by vacating the conviction and sentence only as to Count 7 – the count that did not appear to conform to the terms of the plea agreement.

---

[1] The indictment charged Hughes with: one count of attempted first-degree murder, attempted second-degree murder, eight counts of first-degree assault, first-degree burglary, seven counts of second-degree assault, third-degree burglary, four counts of wear and carry a deadly weapon with intent to injure, malicious destruction of property, and fourth-degree burglary.

[2] *Anthony Thomas Hughes*, No. 2771, Sept. Term, 2003 (filed May 6, 2005).

Dissatisfied with the post-conviction court's grant of only partial relief, Hughes invoked the jurisdiction of this Court in two respects: he filed a notice of appeal[3] based on the court's denial of his initial Motion to Correct Illegal Sentence, and an application for leave to appeal[4] based on the court's consideration of his petition for post-conviction relief. We granted the application for leave to appeal and consolidated it with the direct appeal.

On appeal, Hughes asks this Court to determine whether the post-conviction court erred by not allowing him to elect his remedy in response to the breach of the plea agreement, and by vacating the conviction and sentence as to Count 7 only, rather than vacating the entire plea agreement.[5]

Finding that the sentence imposed on Count 7 was illegal and agreeing with the post-conviction court's choice of remedy, we shall affirm.

## FACTUAL BACKGROUND

Because Hughes presents only procedural questions, we need not set forth an extensive factual recitation in support of the underlying convictions. Therefore, we provide

---

[3] *Hughes v. State*, No. 325, September Term, 2017.

[4] *Hughes v. State*, No. 331, September Term, 2017.

[5] Appellant's questions, as presented in his brief:

> After the lower court correctly found that Mr. Hughes' sentence failed to conform to his binding plea agreement, did the lower court err: (1) by failing to permit Mr. Hughes to elect his choice of remedies, and withdraw his guilty plea; and/or (2) by affording Mr. Hughes a remedy neither requested, nor previously sanctioned in Maryland, by vacating solely that portion of the plea and sentence which failed to conform to the parties' binding plea agreement?

only a brief narration of the relevant background.  *See Teixeira v. State*, 213 Md. App. 664, 666 (2013); *Washington v. State*, 190 Md. App. 168, 171 (2010).  For context, we refer to the State's brief for a summary of the events of December 31, 2002.

On that evening, Hughes broke into the home of his ex-wife, Ellen Redifer, in Westminster, Carroll County.  Redifer, her daughter, Arianna Hughes and Arianna's boyfriend, Sean Malay, fled from the house, and were pursued by Hughes.  Hughes caught Redifer and struck her multiple times in the head, neck and upper chest with a large framing hammer.  Malay attempted to intervene but was threatened with the hammer.  Redifer's neighbor, John Glover, responded and pulled Hughes away from Redifer, and he too was struck with the hammer.  Hughes and Glover grappled, and Hughes cut Glover in the back of the head with a box cutter knife.  At that point Hughes ran from the scene but returned and attempted to run down all of them with his car.  Hughes then fled to a relative's house in West Virginia, where he was later arrested.  Redifer survived the critical injuries sustained in the attack.

## PROCEEDINGS BELOW

On July 21, 2003, Hughes pleaded not guilty on an agreed statement of facts proffered by the State, after which the court found him guilty on all counts.  The court imposed a sentence of life plus 45 years' imprisonment.  Hughes appealed, arguing that he had not knowingly and voluntarily waived his right to a jury trial.  This Court agreed, reversed his convictions, and ordered a new trial.  *See Hughes v. State*, No. 2771, Sept. Term, 2003 (filed May 6, 2005).

3

On the day that Hughes appeared for a motions hearing preliminary to his new trial, a binding plea agreement was negotiated.[6] Hughes agreed to plead guilty to five counts: Count 1 – attempted first-degree murder of Redifer; Count 7 – first-degree assault of the neighbor, John Glover; Count 11 – first-degree burglary; and to Counts 14 and 15 – second-degree assault of Arianna Hughes and Sean Malay, respectively. In exchange for the guilty plea the State agreed to ask for a sentence of 75 years' incarceration with all but 45 years suspended for the attempted murder count (Count 1). The remaining four counts (Counts 7, 11, 14 and 15) were to carry either suspended or concurrent sentences.

Following recitation of the agreement, the court advised Hughes of his rights pursuant to Md. Rule 4-242, including an extensive *voir dire* to establish his competency to enter into the plea agreement. Thereafter, the court accepted the plea agreement, binding to its terms, and the State gave a factual proffer to support the charges. The court found Hughes guilty of the five counts and ordered a pre-sentence investigation. As agreed, the State then entered a *nol pros* of the remaining counts of the indictment.

At sentencing, the State requested, pursuant to the binding plea agreement: as to Count 1 (attempted murder) 75 years' incarceration with all but 45 years suspended; as to Count 7 (first-degree assault), 25 years consecutive to Count 1, but suspended; and concurrent term-of-years sentences for the three remaining charges, all of which the court

---

[6] The record does not contain a transcript of negotiation discussions.

4

imposed.[7] As agreed at the plea hearing, the State had *nol prossed* the remaining counts that were not included in the plea agreement. Appellant did not object to the sentences as requested or imposed and confirmed on the record that he understood the sentences imposed and that he had no questions about them.

Soon thereafter, Hughes moved to modify his sentence, and requested that the motion be held *sub curia*. The motion was denied without a hearing. On September 5, 2012, Hughes filed a *pro se* Motion to Correct Illegal Sentence, contending that he never consented to a 75-year sentence. That motion was also summarily denied.

Hughes next filed an "Application for Leave to Appeal Denied [sic] the Motion to Correct Illegal Sentence." Other than the caption, the document was essentially a handwritten copy of his original typed motion. The Clerk's office noted on a "Case Frequency Report" that, "This motion has already been denied See order dated 9.24.12." Because of that, the filing was not treated as Hughes' appeal of the court's denial of his Motion to Correct Illegal Sentence, and no further action was taken by the court. The State had also filed a formulaic response to appellant's handwritten filing, incorporating its response to the original motion.

---

[7] Initially at sentencing, the court failed to include a term of probation, as required when a portion of a sentence is suspended; however, the court recalled the case later that same day and imposed a five-year term of probation to follow Hughes' release from incarceration.

On February 10, 2016, Hughes, now represented by counsel, filed a petition for post-conviction relief, again challenging the legality of the sentence.[8]  He argued that the State and court violated the plea agreement when a 25-year consecutive sentence for Count 7 was requested and imposed, which exceeded the terms of the plea agreement, thereby rendering the sentence illegal.  As to relief, he proclaimed his entitlement to either vacate the entire plea agreement, or to have it specifically enforced by making the Count 7 sentence a concurrent suspended sentence of 25 years, rather than consecutive.

Following a hearing, the post-conviction court issued an order granting relief in part by vacating the conviction and the sentence for Count 7, leaving all other convictions and sentences unchanged.[9]  The post-conviction court ordered a new trial on Count 7.  At the

---

[8] The initial petition for post-conviction relief raised five questions for the court's review. The first two questions related to appellant's plea being knowingly, intelligently, and voluntarily made without full compliance with Rule 4-242.  Two questions related to the illegality of the sentence and whether Hughes was entitled to elect his remedy.  The final question was an ineffective assistance of counsel claim.

The petition was later amended to add a claim challenging the legality of the sentence that was originally imposed without a term of probation.  However, the case was recalled, on the day of sentencing, to allow the trial court to add a five-year probation term to the sentence.  This claim is not being pursued on appeal.  At the hearing, Hughes withdrew all claims from the original request, except for those relating to the illegality of his sentence.

[9] We question the court's authority to vacate the conviction under Count 7.  Rule 4-345(a) affords the court the authority to "correct an illegal sentence at any time [,]" but it does not give the court the authority to vacate an otherwise valid and lawful conviction.  However, because the State effectively abandoned its intent to pursue Count 7 by entering a *nol pros* before the scheduled retrial, and by failing to pursue a cross-appeal challenging the court's authority, the State has waived the matter.

6

time of Hughes' initial appearance pursuant to that Order, the State entered a *nol pros* to Count 7. Those events occurred on the day following Hughes' filing of a notice of appeal and an application for leave to appeal, to which we have referred, *supra*.[10]

## DISCUSSION

The procedural posture of this appeal requires that we preliminarily address two underlying issues: (1) the effect of the State's entry of *nol pros* as to Count 7 *after* an appeal had been noted; and (2) whether, when determining the appropriateness of the remedy afforded, we can review the post-conviction court's determination that the sentence imposed by the trial court was illegal. While these two issues were not directly argued by the parties in their respective briefs, they were considered below, and discussion is necessary in order for our discussion of the merits of the consolidated appeals.

### The State's *Nol Pros* of Count Seven

Hughes does not directly challenge the State's ability to enter a *nol pros* of a count after the defendant has noted an appeal. Nonetheless, because it is a predicate to our review of the post-conviction court's decision, we shall briefly address the question.

On April 25, 2017, Hughes filed his notice of appeal and an application for leave to appeal together with a motion to stay proceedings pending resolution of the appeals and, on the following day, the State entered a *nol pros* of Count 7. The State contends, generally, that "Hughes received more than [that] to which he was entitled under the plea

---

[10] At the same time, Hughes moved for a stay pending the outcome of his appeal. That matter is not before the Court.

7

agreement when the court vacated his felony conviction and sentence in count seven and the State elected not to reprosecute [sic] him on that charge."

While the parties acknowledge the issue of the timeliness of the *nol pros*, neither question the legal effect of its post-judgment entry.

An entry of *nol pros* on a count or charge reflects the "prosecutor's desire not to proceed against the accused on the basis of that particular charging document." *State v. Ferguson*, 218 Md. App. 670, 680 (2014) (quoting *Huebner v. District Court of Maryland*, 62 Md. App. 462, 470 (1985)). We have said, the "[e]ntry of a *nol pros* 'is generally within the sole discretion of the prosecuting attorney, free from judicial control and not dependent upon the defendant's consent.'" *Ferguson*, 218 Md. App. at 680 (quoting *Ward v. State*, 290 Md. 76, 83 (1981)). However, that authority is not without limits.

As we recently held in *Simms v. State*, 232 Md. App. 62 (2017), a "post-conviction *nol pros* is ineffective …." 232 Md. App. at 70. Simms went to trial on an agreed statement of facts and was found guilty. *Id*. at 64, 67. He was sentenced according to an agreed-upon sentence on one charge and the State *nol prossed* the remaining charges. *Id*. Simms then appealed, asserting, *inter alia*, insufficiency of the evidence. *Id*. at 64. While the appeal was pending before this Court, the State entered a *nol pros* of the count on which Simms had been convicted. *Id*. at 64, 67.

> The Court of Appeals granted *certiorari* and affirmed, *sub nom,* clarifying that
>
> after a defendant has received a final judgment in the form of a conviction and sentencing, the State may not enter a nolle prosequi to alter the final judgment. Upon conviction and sentencing based upon an underlying charge, the underlying charge is no longer pending and the State's authority to enter

8

a nol pros has ended. Final judgment terminates the case in the trial court….
Therefore, the State lacked the authority to nol pros in order to alter the final
judgment or to eliminate the appellate process initiated by [appellant].

*State v. Simms*, 456 Md. 551, 578 (2017).

The Court of Appeals reasoned, that "[b]ecause [appellant] appealed his conviction
and sentence, the trial court had no jurisdiction to alter the conviction or sentence by relying
on the State's nol pros authority." *Id*. at 576.

We need not apply *Simms* to the matter before us, because we ultimately shall hold
that the post-conviction court was correct in ruling that Hughes' sentence on Count 7 was
illegal, and because we conclude that the remedy granted by the post-conviction court
restores Hughes to the terms of the plea agreement, we assume, *arguendo*, the legal effect
of the State's *nol pros*.

**The State did not note a cross-appeal**

A second preliminary inquiry is our authority to review the post-conviction court's
underlying determination that the sentence exceeded the terms of the plea agreement.
Attempting to limit the scope of our review, Hughes asserts that "[t]he lower court's finding
that [his] sentence failed to conform to the parties' binding plea agreement is beyond the
scope of this appeal …." because the State has failed to file a cross-appeal from the ruling
of the post-conviction court.

The scope of appellate review is governed by Maryland Rule 8-131, providing, in
relevant part, that:

> Ordinarily, the appellate court will not decide any other issue unless it plainly
> appears by the record to have been raised in or decided by the trial court, but

the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

Rule 8-131(a).

But, the Rule affords this Court discretion to consider issues that were "raised in or decided by the trial court[.]" *Id.* Additionally, the Rule permits the exercise of discretion over matters that were neither raised in nor decided by the trial court, when "such an issue [is] necessary or desirable to guide the trial court …." *Id.*

Hughes refers us to *Walston v. Sun Cab Co., Inc.,* 267 Md. 559 (1973), for the proposition that an *appellee* cannot urge this Court to consider matters outside the scope of an appeal absent a cross-appeal. *Walston,* however, expressly limits any restriction to "matters not within or related to the issues raised by an appellant." 267 Md. at 564. Clearly, the issues presented to the post-conviction court regarding the legality, or illegality, of Hughes' sentence and the extent to which the parties received the benefit of the plea bargain, are sufficiently intertwined to be considered as issues related to those raised in Hughes' direct appeal and his application for leave to appeal.

Hughes asks us to review the court's choice of remedies. Therefore, we review the court's factual findings that resulted in the remedy afforded when determining whether that remedy was appropriate. Indeed, in determining whether the post-conviction court erred in its choice of remedies, as Hughes argues, we review what the plea agreement contemplated and whether the State and the trial court complied with its terms. Such review presents matters "within or related to" the issues raised by Hughes, and within this Court's discretion to consider.

10

**Binding Plea Agreements**

Plea agreements are a vital and efficient mechanism for both the State and the defendant, as well as for the public. *See Cuffley v. State*, 416 Md. 568, 577 (2010). The Maryland Rules governing plea agreements provide strict safeguards and procedures to ensure that the defendant's procedural due process rights are protected.

Judge Moylan has explained for this Court:

> A plea agreement is, of course, a contract between a criminal defendant and the State in which each seeks to gain a benefit and, in return for such benefit, each agrees to pay a price. It is a very special contract, moreover, in that even after the basic quid pro quo is agreed upon by the primary contracting parties, the entire package may be submitted to a criminal court for its approval and its subsequent enforcement. If it should then be the enforcing authority (to wit, the court) that commits a breach of the contract, what even-handed justice requires is that each of the primary contracting parties, if suffering from the breach, is equally entitled to seek a remedy under equally conducive procedural conditions.

*State v. Smith*, 230 Md. App. 214, 218 (2016), *aff'd*, 453 Md. 561 (2017).

Maryland Rule 4-242 imposes various conditions that must be satisfied before a court can accept a guilty plea. In this case, there is no challenge to the adequacy of the trial court's qualification of Hughes' plea.

While Rule 4-242(h)[11] limits when a defendant can move to withdraw a plea when a violation of the agreement is asserted, Rule 4-345, which governs revision of sentences,

---

[11] Rule 4-242(h) provides that a defendant may withdraw a plea "[a]t any time before sentencing," and thereafter if made by motion within ten days, at which point "the court may set aside the judgment and permit the defendant to withdraw a plea of guilty[ ]… if the defendant establishes that the provisions … of this Rule were not complied with or there was a violation of a plea agreement entered into pursuant to Rule 4-243…."

expressly provides that "[t]he court may correct an illegal sentence *at any time*." Rule 4-345(a) (emphasis added). Maryland courts have consistently held that

> "a sentence imposed in violation of the maximum sentence identified in a binding plea agreement and thereby 'fixed' by that agreement as 'the maximum sentence allowable by law,' is … an inherently illegal sentence[,]" and is cognizable under Maryland Rule 4-345(a).

*Ray v. State*, 454 Md. 563, 572 (2017) (quoting *Matthews v. State*, 424 Md. 503, 519 (2012)).

When reviewing the illegality of a sentence, we must resolve the terms of the plea agreement, which, unless in writing, must be ascertained through only the record of the plea agreement hearing. *See Cuffley*, 416 Md. at 582 (establishing "that any question that later arises concerning the meaning of the sentencing term of a binding plea agreement must be resolved by resort *solely* to the record established at the Rule 4-243 plea proceeding" (emphasis in original)). Further, it matters not what the State, the court, or the defendant intended or understood the terms to be at that time; rather, the terms are resolved under an objectively reasonable person standard. *See Ray*, 454 Md. at 577 (a court "must determine what a reasonable lay person in the defendant's position would understand the agreed-upon sentence to be, based on the record developed at the plea proceeding").

It is established that

> "[t]he test for determining what the defendant reasonably understood at the time of the plea is an objective one. It depends not on what the defendant actually understood the agreement to mean, but rather, on what *a reasonable lay person in the defendant's position* and unaware of the niceties of the sentencing law would have understood the agreement to mean, based on the record developed at the plea proceeding. It is for this reason that extrinsic

12

evidence of what the defendant's actual understanding might have been is irrelevant to the inquiry."

*Ray*, 454 Md. at 579-80 (emphasis added) (quoting *Cuffley*, 416 Md. at 582). If, however, "we still find ambiguity regarding what the defendant reasonably understood to be the terms of the agreement, then the ambiguity should be construed in favor of the defendant." *Id*. at 577-78.

Applying this test to the instant case, we are persuaded that the terms of the plea agreement were not ambiguous; but, the sentence imposed was inconsistent with the stated terms of the agreement and thus illegal.

**The Plea Agreement**

The transcript of the plea agreement discussions reflect that the plea agreement was originally articulated on the record as: "The State's position, Your Honor, would be asking for a sentence of 75 years to serve, suspend all but 45 years to serve[,]" … "on a Guilty Plea to Counts One, Seven, 11, 14, and 15…."

We excerpt relevant portions of defense counsel's qualification of Hughes on the plea agreement:

> [COUNSEL]: The second ground is that you received an illegal sentence. Respectfully, the maximum penalty for attempted murder in the first degree in the State of Maryland is life in prison. Do you understand that?
>
> [DEFENDANT]: Yes, I do.
>
> [COUNSEL]: You are receiving not a life sentence but a 75-year sentence with all but 45 years being suspended. Do you understand that?
>
> [DEFENDANT]: Yes, I do.

* * *

[COUNSEL]: Now, you are also receiving secondary sentences, but those sentences *will either be suspended or those sentences will be run concurrent with the 75-year suspend all but 45 years sentence you are receiving on Count Number One*. Do you understand that?

[DEFENDANT]: Yes, I do.

[COUNSEL]: But the maximum penalty for assault in the first-degree is 25 years. Do you understand that?

[DEFENDANT]: Yes, I do.

[COUNSEL]: The maximum penalty for assault in the second-degree is 10 years. Do you understand that?

[DEFENDANT]: Yes, I do.

[COUNSEL]: The maximum penalty for burglary I believe is 15 years. Twenty years, burglary in the first-degree.

[DEFENDANT]: Are you sure it's 20?

* * *

[COUNSEL]: Twenty years. Okay. Do you understand that?

[DEFENDANT]: Yes, I do.

[COUNSEL]: Very good. And *provided the Judge does not give you sentences that exceed those penalties then the Judge's sentence will be a legal sentence* and in all likelihood your application on that ground would fail. Do you understand that?

[DEFENDANT]: Yes, I do.

(Emphasis added).

Hughes argues that he

14

tendered his guilty plea pursuant to a very specific plea agreement: he tendered the plea to five enumerated counts … in return for the negotiated sentence…. The agreement, therefore, called for these five counts to be resolved, via a guilty plea which resulted in a sentence which did not exceed a term of seventy-five years incarceration (with all but forty-five years of that term suspended)….

Further, he asserts that "[t]he [post-conviction] court's chosen remedy, therefore, again violated the terms of the binding plea agreement, and exceeded what [he] was entitled to[.]" (Footnote omitted).

Experience tells us that the ebb and flow of discussion at a sentencing hearing may sometimes create uncertainty in the minds of the principals and may have done so in this instance. The plea agreement articulated on the record contained no provision for a consecutive sentence to any of the pleaded counts. It was clear on its face. The sentence imposed, in fact, was burdened with the possibility of being greater than 75 years should Hughes be paroled or otherwise released after serving the 45-year sentence and then reoffend, thereby exposing himself to execution of the suspended consecutive 25-year sentence.

**Standard of Review**

"A substantively illegal sentence is subject to correction at any time." *State v. Crawley*, 455 Md. 52, 66 (citing Rule 4-345(a)), *reconsideration denied* (Aug. 23, 2017). "The principle that a substantively illegal sentence must be corrected applies regardless of whether the sentence has been negotiated and imposed as part of a binding plea agreement." *Crawley*, 455 Md. at 67. As such, it follows that "'a sentence imposed in violation of the maximum sentence identified in a binding plea agreement and thereby fixed by that

15

agreement as the maximum sentence allowable by law, is … an inherently illegal sentence[,]' and is cognizable under Maryland Rule 4–345(a)." *Ray*, 454 Md. at 572 (quoting *Matthews*, 424 Md. at 519). We review a court's decision to vacate a plea agreement *de novo*. *Falero v. State*, 212 Md. App. 572, 584 (2013) (citing *Sifrit v. State*, 383 Md. 77, 93 (2004)).

Before the post-conviction court, Hughes' counsel expressly stated that "to be clear, we are challenging the sentence under Maryland Rule 345(a) as being illegal." Counsel offered that "perhaps the Court may find, you know, as to count 7, the 25 years consecutive on assault, all suspended, maybe that is the only illegal sentence. And so, maybe that is the only thing that the Court has jurisdiction to correct."

Hughes' counsel concluded that: "The only rationale [sic] conclusion would be that you must be allowed to withdraw as to the plea in its entirety, otherwise we have got a sort of severance going and we have got some counts standing[.]" When asked by the court if defense counsel had any case law authority to support that proposition, counsel responded that she "could not locate case law that specifically said that …" and that: "I am relying on reason, Your Honor."

In response to the various arguments presented at the hearing, the State challenged the ambiguity allegations, then addressed a lengthy waiver argument and, finally, challenged appellant's assertion of illegality of the sentence. The State argued that if the court were to find the sentence illegal, it can correct it at any time. Essentially, the State argued that any remedy to which Hughes would have been entitled relating to a breach in

16

the plea agreement or an illegal sentence exceeding the agreement, was waived when not presented on the direct appeal. Maryland Rule 4-345(a), however, permits a court to correct an illegal sentence at any time.

The State relied primarily on *Chaney v. State*, 397 Md. 460, 467 (2007), proffering that it stands for the proposition that:

> While a post-conviction proceeding is an appropriate vehicle in which to challenge the legality of a sentence, a far more prudent tact is through a motion to correct an illegal sentence, pursuant to Rule 4-345(a). The later [sic] allows for the right to file a direct appeal from an unfavorable ruling, while the former does not. And he did not do that.

(Internal quotations omitted).

In its memorandum opinion, the post-conviction court considered each issue presented. The court first addressed the waiver arguments, finding that:

> The only alleged illegal sentence in this case is as to count 7 for first degree assault. [Appellant] alleges that the State and the Plea Judge agreed that it would run within the confines of a 75 year, suspend all but 45 year sentence. Certainly, the sentence imposed by the sentencing judge was legal in the sense that it was generally permitted by statute. There is case law, however, that supports the proposition that once a judge commits the Court to a sentence less than the maximum permitted by law, violation of the lesser term becomes an illegal sentence, just as if the judge had violated the statutory limits. *Dotson v. State*, 321 Md. 515, 524 (1990). Since that is precisely the allegation in this case, this claim, if proven, would fall into the second category of illegal sentences and would not have been waived by failing to appeal.[12]

---

[12] As to waiver, as it related to Hughes' failure to appeal the denial of his *pro se* Motion to Correct Illegal Sentence, the court found that he had attempted to file an application for leave to appeal the denial of that motion, but it was handwritten and misread by the court and had remained dormant, "but not due to any fault of his." As a result, the court concluded to "treat the Application as a request for reconsideration of that prior Motion to Correct Illegal Sentence."

Speaking to whether the State, the trial court, or both, violated the plea agreement, the post-conviction court engaged in a careful review of the plea and sentencing hearings:

> From this record, the plea agreement initially involved a recommendation by the State. The first portion of the plea transcript relative to this is when the Assistant State's Attorney put on the record that the State is "asking" for a sentence of 75 years suspend all but 45 years on all counts. No one corrected this representation. Next, Defense Counsel advises [appellant] that "the judge has committed to giving you a sentence that you negotiated here and that was read into the record a little earlier." Likewise, this statement was never corrected or clarified. Since the only sentence that was "read into the record a little earlier" was the 75 year suspend all but 45 years, [appellant] was being advised, at least up to this point in the transcript, that the maximum sentence he faces is the 75 years suspend all but 45 years. Finally, in discussing the limitations of his rights on appeal, Defense Counsel advised that he would be given 75 years suspend all but 45 years for attempted first degree murder, that he could be given concurrent or suspended sentences for the other charges, and then proceeded to list the maximum penalties that the statutes provide for each crime. This advice appears to contradict the prior "negotiated" sentences that the Plea Judge "committed" to give [appellant]….

> In this case, being limited to the record in this case, it is not clear which sentence the parties intended. Accordingly, the plea agreement will be interpreted to require the imposition of the lesser of the two sentences, that being an aggregate of 75 years suspend all but 45 years.

The court found that the State had breached the agreement by asking for the consecutive sentence and the trial court breached the agreement by imposing that sentence. As a result, the post-conviction court granted relief "by vacating the plea and sentence for such offense and setting the matter in for an initial appearance on Count7 [sic]." However, the court also acknowledged that Hughes was seeking "to withdraw his plea agreement as to those sentences which were undeniably legal[,]" but that it could find no case law to support that position, asserting entitlement to "withdraw [a] plea as to legal sentences as a

18

consequence for the imposition of an illegal sentence on a single charge." For support, the court stated that it "notes that rules of plea agreements are not to be enforced strictly pursuant to contract law, but rather must adhere to the principles of fairness and equity." Further finding that:

> There would certainly be nothing 'fair' or 'equitable' in permitting the withdrawal of all pleas when, as here, the error is limited. Nor can [appellant] point to any prejudice that he has incurred, is incurring, or will incur by permitting him to withdraw his plea only as to the illegal sentence.

> Based on that finding, the court granted Hughes relief in part and denied it in part.

## The Remedy

We agree with the post-conviction court that the State's request for the consecutive sentence, and the trial court's imposition of that sentence, created an illegal sentence. Thus, we reach the ultimate question before us: the appropriateness of the post-conviction court's grant of partial relief by vacating the sentence and conviction only as to Count 7.

Maryland Rule 4-345(a) provides that "[t]he court may correct an illegal sentence at any time." An illegal sentence has been defined as "one 'in which the illegality inheres in the sentence itself.'" *Rainey v. State*, 236 Md. App. 368, 374 (quoting *Chaney*, 397 Md. at 466), *cert. denied*, 460 Md. 23 (2018). We explained in *Carlini v. State*, 215 Md. App. 415 (2013), when discussing the Court of Appeals's decision in *Matthews v. State*, *supra*, that the Court "made explicit what had theretofore been only implicit, to wit, that a sentence in excess of the sentencing cap agreed upon in a binding plea agreement is *ipso facto* an illegal sentence cognizable under Rule 4-345(a)." *Carlini*, 215 Md. App. at 431. The *Matthews* Court also stressed that "even if the sentencing terms, as expressed at the plea

hearings, were ambiguous, the ambiguities must be resolved in the defendants' favor."

*Matthews*, 424 Md. at 523 (citing *Cuffley*, 416 Md. at 586; *Baines v. State*, 416 Md. 604, 620 (2010)).

Hughes contends that the court's error was, "rather than affording [him] his traditional ability to elect his remedy from these two options – or respecting his election to withdraw the plea – the court provided a remedy which has never before been sanctioned in Maryland, *viz.*, vacating one count of a multi-count plea agreement and providing a new trial on that sole count." He offers no authority in support of that bald assertion, nor have we found any authority that the remedy ordered by the post-conviction court in this case has "never before been sanctioned" by the appellate courts of this State.[13]

---

[13] At oral argument before this Court, the State interestingly pointed out the Court of Appeals's decision in *State v. Crawley*, 455 Md. 52 (2017), wherein the Court determined that "[t]he principle that a substantively illegal sentence must be corrected applies regardless of whether the sentence has been negotiated and imposed as part of a binding plea agreement." 455 Md. at 67. Further that, "Crawley's sentence – unlawful as originally imposed [a split sentence without a period of probation] – was properly remedied through the imposition of a period of probation[,]" despite his argument that it exceeded the terms allowed pursuant to the binding plea agreement. *Id.*

Crawley had pleaded guilty pursuant to a binding plea agreement that did not contemplate or mention a term of probation. *Id.* at 56. At sentencing, Crawley was sentenced in accordance with the plea and given a split sentence of life imprisonment with all but 35 years suspended without a period of probation. *Id.* at 56-57. Following the Court's decision in *Cathcart v. State*, 397 Md. 320 (2007), Crawley moved to revise his illegal sentence based on the court's failure to impose a period of probation. *Id.* at 61. At resentencing, the court vacated the agreed upon sentence and re-imposed a life sentence with all but 35 years suspended, affording him the time he had served thus far, and added a term of four years of probation, which Crawley appealed, alleging that it exceeded the agreed upon terms of the plea agreement. *Id.* at 62.

20

Hughes asserts that the court was correct in finding that the sentence was illegal but argues that it erred in the remedy it afforded him. He argues that the court's error in severing the convicted counts and the sentences was twofold: first, in "focusing on the guilty plea, and the sentences for each count, as individual and discrete sentences, rather than as necessary and interrelated parts of a comprehensive whole[;]" and second, in "focusing [on] the perceived fairness of the relief, rather than the other core constitutional considerations at stake." Hughes concludes that "ultimately, the concerns for fairness and equity are subordinate to the constitutional considerations, *viz.*, ensuring that when the accused tenders a guilty plea as consideration for a binding agreement, the accused receives the full benefit of his or her bargain." Although Hughes sprinkles his arguments with references to constitutional considerations, he offers neither argument nor authority in support of those concepts.

In *Twigg v. State*, 447 Md. 1 (2016), the Court of Appeals in its analysis of Maryland Code (1988, 2013 Repl. Vol.) Courts and Judicial Proceedings Article, § 12-702, concluded that the term "offense" means "not simply one count in a multi-count charging document,

---

As the State emphasized at oral argument before this Court, Crawley was not given the two options that Hughes contends are the only remedies that a defendant is afforded when a sentence is imposed in excess of the terms of a binding plea agreement – withdrawal of the plea or specific performance. Instead, the Court of Appeals afforded courts the authority to correct the illegality by adding a term of probation to split sentences where one had not previously been imposed, including those bound by binding plea agreements. *Id.* at 67-68. To account for the apparent deviation from its recent precedents, the *Crawley* Court distinguished its decision from the *Cuffley v. State* progeny, asserting that unlike Crawley's agreed upon sentence that was inherently illegal, those cases "dealt with resolving ambiguous sentencing terms of a plea agreement." *Id.* at 67.

but rather the entirety of the sentencing package that takes into account each of the individual crimes of which the defendant was found guilty." 447 Md. at 26-27. For support, the Court of Appeals referred favorably to this Court's reasoning in our opinion that,

> "[i]n imposing sentences for multiple convictions in a single case, a trial judge considers not only the sentence for each conviction, but also the total sentence for all of the convictions together. Indeed, the Maryland Sentencing Guidelines are structured to reflect such dual consideration. The sentencing guidelines provide a guideline range for each conviction, and then an overall guideline for all of the convictions, viewed as a whole."

*Twigg*, 447 Md. at 27 (quoting *Twigg v. State*, 219 Md. App. 259, 287 (2014)).

Hughes draws on the *Twigg* Court's discussion of the "sentencing package," wherein it recognized that despite ambiguity, in cases that involve multiple charges that arise from a single event, "it is not unreasonable to understand the terms as referring to the total sentence for all those counts upon which the defendant was convicted." *Id*. at 25. Further, that "[c]onstruing the 'offense' in § 12-702(b) as referring in multi-count cases to the aggregate of the various component parts – *i.e*., individual counts – and the 'sentence' in such cases as referring to the entire sentencing package readily comports with the widely held view of the realities of trial judges' approach to sentencing." *Id*. at 28.

Applying the Court's reasoning to his argument, Hughes contends that "[i]n equal force, a binding plea agreement – which encompasses multiple counts of a multi-count charging document – cannot be viewed as a series of individual agreements to individual counts and sentences[;] [r]ather, … it is a global agreement to a global resolution[.]"

22

Which, he asserts, means that "the violation of one provision of the agreement is a violation of the entire agreement."

In his reply brief, Hughes posits further that "[b]ut for the agreement, the defendant would not have pled guilty, and could be sentenced only if, at trial, the State proved guilt beyond a reasonable doubt. The agreement, therefore, induced the plea, secured the finding of guilt, and gave the court the authority to impose sentence."[14] Because of that alleged inducement, he avers that "[t]he relationship between the agreement, conviction, breach and illegal sentence are therefore so intrinsically intertwined that the remedy cannot be limited merely to sentence correction; the error does not affect only the sentence, but infects and vitiates the regularity of the underlying conviction itself."

Hughes also refers us to *Johnson v. State*, 427 Md. 356 (2012) to support his assertion that

> [b]ecause the breach of a binding plea agreement vitiates the promises in which induced and secured the decision to plead guilty, the imposition of a sentence in violation of the agreement – particularly at the behest of the State – is one of the rare scenarios in which the illegality of the sentence affects both the sentence and the underlying conviction.

The helpful language Hughes refers to in *Johnson* is: "[w]hen the illegality of a sentence stems from the illegality of the conviction itself, Rule 4-345(a) dictates that both

---

[14] We recall that Hughes, although entering a not guilty plea to all 25 counts of the indictment when the matter first came to trial in 2003, proceeded on an agreed statement of facts, resulting in a guilty verdict on all counts. In fact, during his acceptance of the guilty plea agreement entered on remand, when asked if he was pleading guilty because he was actually guilty, Hughes conceded his guilt, stating, "yes, I did hurt Ellen Redifer and these other people…." but that he "didn't make a conscious decision to try and kill anybody."

23

the conviction and the sentence be vacated." 427 Md. at 378. However, Johnson was convicted and sentenced for a crime with which he had not been charged. Such is not the case in the present appeal. Hughes raises no challenge to his convictions or to the sufficiency of the evidence underlying those convictions. He was correctly convicted on all five counts. Hughes' challenge is solely to the sentence, not the underlying conviction.[15]

We shall affirm. We concur in the post-conviction court's finding that the sentence imposed on Count 7 was an illegal sentence. Moreover, we find the court's resolution of that illegality in Hughes' favor by striking the conviction and sentence to Count 7 to be equitable and reasonable as well as legally correct, in that it restores to Hughes his benefit of the bargain – a sentence of 75 years, all of which is to be suspended but 45 years, without exposure to potential future incarceration. Hughes has received the benefit of his bargain.

**JUDGMENT OF THE CIRCUIT COURT FOR CARROLL COUNTY AFFIRMED; COSTS ASSESSED TO APPELLANT.**

---

[15] Despite Hughes' argument that he is entitled to withdraw the entire plea agreement as to all counts, he conceded at the post-conviction hearing that the court may only have authority to correct the sentence as to the one non-conforming count. Indeed, at oral argument, his appellate counsel also conceded that no case has explicitly granted that remedy, only implicitly, because no one has yet sought that remedy.